G. FRANCIS TOPLIFF AND CHARLES B. BROOKS v. EDWARD J. McKENDREE.

*Contract by correspondence—Incomplete negotiations.*

The letters and telegrams set forth in the opinion are held not to have made a completed contract for the sale by defendant to plaintiffs of 100 shares of mining stock, the manner and place of delivery being left open for future negotiation between the parties.

Error to Wayne. (Hosmer, J.) Argued October 14, 1891. Decided October 30, 1891.

*Assumpsit.* Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Bowen, Douglas & Whiting,* for appellants, cited no authorities.

*Conely, Maybury & Lucking,* for defendant, contended:

1. Inasmuch as the place of delivery was a material part of the proposed sale, and inasmuch as this was never agreed on, there was no completed contract; citing *Van Valkenburg v. Rogers,* 18 Mich. 180; *Johnson v. Stephenson,* 26 Id. 63; *Ahearn v. Ayres,* 38 Id. 692; *Eggleston v. Wagner,* 46 Id. 610, 620; *McDonald v. Bewick,* 51 Id. 79; *Thomas v. Greenwood,* 69 Id. 215; *Whiteford v. Hitchcock,* 74 Id. 208, 211; *Lumber Co. v. Crosby,* Id. 313, 317; *Bowen v. McCarthy,* 85 Id. 26.

GRANT, J.   Plaintiffs and defendant were stock-brokers, the former in Boston, the latter in Detroit.   November 30, 1885, defendant wrote plaintiffs, in which, among other things, he said:

"Lake Superior Iron Mining Co. stock can be bought here at about 40 to 41 per share. If you can do anything at those figures, I can furnish some of the stock, say 100 to 200 shares."

Some correspondence in regard to this and other matters, by letters and telegrams, followed, but which have no bearing upon the question at issue.   December 3, defendant wrote plaintiffs, stating:

"I can furnish you 100 shares Lake Superior at $41.00 per share, but with little or no profit to myself.   Still, I will furnish you with the stock if you order it.   Can ship it to you, I guess, with draft attached."

This letter was received the morning of December 5, and plaintiffs immediately replied as follows:

"Your favor of the 3d is at hand, in which you offer us 100 shares Lake Superior Iron M. Co. at 41.   *   *   *   Our customers are slow in buying the stock.   We had a favorable offer for 25 shares to-day, but did not dare to sell, as we inferred from your letter that you did not care to break the lot.   If you can sell us any part of 100 shares, say 25, 50, or 75 shares, at 41, please wire us early Monday A. M., as our buyer may withdraw his bid.   We hope to dispose of the whole lot early next

week. State length of time at which your offer of the stock is good."

December 7, two days after the receipt of the above letter, plaintiffs telegraphed defendant as follows:

"We take 100 Lake Superior, 41. Forward, draft attached."

On the same day they wrote defendant, saying:

"We wired you this A. M. as follows: 'We take 100 Lake Superior, 41. Forward, draft attached,'—which we now confirm. We expect the stock Wednesday or Thursday."

Receiving no reply from defendant, plaintiffs, on December 9, telegraphed defendant:

"No stock, letter, telegram from you. What does it mean? Explain at once by wire."

To this telegram defendant replied by letter December 11, saying:

"Much to my regret, I am unable as yet to furnish that 100 shares of Lake Superior stock."

He also stated his reasons for not furnishing it, and further stated that there was no doubt but that he could get it, as it had got to be sold, and expressed the hope that the matter would not put them to too great inconvenience.

I do not think this correspondence made a completed contract. The defendant did not bind himself to send the stock to Boston, nor did the plaintiffs bind themselves to accept it and pay for it in Detroit. No binding and completed contract could have been made otherwise than by the acceptance on the part of the defendant of the terms of the telegram of December 7. *McDonald v. Bewick*, 51 Mich. 79; *Eggleston v. Wagner*, 46 Id. 610; *Bowen v. McCarthy*, 85 Id. 26.

The statement, "I guess I can ship it to you with

draft attached," cannot be construed into an absolute offer to ship it. The manner and place of delivery were left open for future negotiation between the parties. Plaintiffs' letter of December 5, and their own evidence upon the trial, show that they must have so understood it. On December 7 they had negotiated a verbal sale of the stock, but refused to complete it until defendant had confirmed their offer by telegram. Getting no reply from defendant by 3 o'clock P. M., they told their customer that they would sell him the stock.

The letter of defendant of December 11 was not an acceptance of the plaintiffs' offer contained in their telegram of December 7. That letter stated that he was unable to furnish the stock. The defendant did not then have the stock under his control. The owner was in New York, and the stock was in a Detroit bank as security. The owner refused to release it until he returned. All these facts were communicated by defendant to plaintiffs in his letter of December 11. The statement that "there is no doubt about getting the stock." constituted no binding agreement on his part to procure it, and there is nothing else in the letter from which any contract could be implied.

The court below properly directed a verdict for defendant.

Judgment affirmed.

The other Justices concurred.