## KIRSCHMANN *vs.* LEDIARD & REE.

By an agreement between the parties, the plaintiff agreed to sell a certain patent to the defendants, who, it was recited, were about to organize a company, for the manufacture of articles under said patent; and the plaintiff agreed to make such conveyances as should be necessary to carry the agreement into effect, immediately, upon the organization of the company; and in consideration thereof, the defendants agreed to transfer to the plaintiff an amount equal to $50,000 of the capital stock of such company, and to pay him $500 in cash; and $10,000 in stock, for the tools and materials.

*Held,* 1. That the agreement was personal with the defendants, and was to be completed on the formation of the company by them, when the transfer of the patent should be made to the company.

2. That under such agreement, the defendants were obligated to form the company; and if, after a reasonable time, the defendants refused or neglected to form the company, the plaintiff could recover from them damages for such refusal or neglect. And that the defendants could not escape liability by refusing or neglecting to organize a company on finding it likely to prove unprofitable.

3. That in an action for a breach of the contract by the defendants, it was erroneous to direct a verdict in favor of the plaintiff, for the nominal amount of the stock.

4. That the plaintiff was entitled to damages, for the breach of the contract; but the *amount* depended on the value of the stock after the corporation was formed, to be proven by showing what such value would have been, if the company had been formed, taking into consideration the property that was to be transferred, and also the fact that by the breach of the contract the plaintiff was released from the obligation to transfer the property. That the amount of damages was to be ascertained by the jury, from the testimony, and not to be measured by the nominal value agreed to be paid.

APPEAL by the defendants from a judgment entered upon the verdict of a jury.

The action was brought to recover damages for the breach of an agreement by the defendants.

The complaint alleged that on the 7th day of June, 1864, a patent was issued to the plaintiff out of the United States patent office, signed by the secretary of the interior, and countersigned by the commissioner of patents, under the seal of the patent office, for improvement in artificial legs, &c., No. 43,031; and that prior to the execution of the agreement hereinafter referred to and set forth, the

plaintiff was the inventor of certain other improvements, as referred to and set forth in said agreement, and was the owner of certain articles mentioned and contained in the schedule annexed to the said agreement. That the said defendants and certain other persons named in said agreement were about to organize an incorporated company under an act of the legislature of the State of New York, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical and chemical purposes," passed February 7, 1848, for the purpose of manufacturing and selling the articles contemplated by the invention of the plaintiff. That the defendants were desirous of securing the said patent and the said inventions, and the services of the plaintiff for said company; whereupon, in consideration of the stipulations contained in a certain agreement made and executed between the plaintiff and the said defendants, on or about the 11th day of July, 1865, and to which the plaintiff referred, and a copy of which was annexed as part of the complaint, he sold, transferred, and set over to the defendants all his right, title and interest in said patent and in his said invention, for an amount equal to $50,000 of the capital stock of said company, to be paid by the said defendants to the plaintiff, and the further sum of $500 in cash; and did also sell, assign, transfer and set over to the defendants all of his said articles mentioned in the said schedule, for which the defendants stipulated and agreed that they would cause to be transferred to the plaintiff, by said company, an amount equal in value to $10,000 of the capital stock of said company. And that the defendants further agreed that they would procure the plaintiff to be employed as the general superintendent of the manufacture of limbs by said company, at a salary of not less than $1000 per year; that the said company would defray all and every expense to be incurred in the procuring of such necessary patents for the improvement

Kirschmann *v.* Lediard.

referred to in said agreement as the plaintiff had made, or might make; all of which stipulations and agreements the defendants agreed to fulfill and perform as soon as said company was organized, excepting the payment of said sum of $500, which was to be paid on the signing of the said agreement. That when said agreement was executed, the defendants and others had agreed to organize said company, to be called the "United States Artificial Limb Company," with a capital of $250,000, and the said defendants and Jacob Berlin represented and stated to the plaintiff that said company would be organized immediately and without any delay whatever. The plaintiff further stated that after the execution of the said agreement, the defendants paid to the plaintiff the sum of $150 on account of the $500 aforesaid, but had failed, neglected and refused to pay the balance of said $500, and the same remained due and unpaid, with interest thereon, from the 11th day of July, 1865. That the defendants and the persons connected with them as aforesaid, failed, neglected and refused to organize said company, and the said defendants wholly neglected and refused to transfer to the plaintiff either money or stock equal in amount to the sum of $50,000 of the capital stock of said company, as they agreed to do, for the patent and inventions of the said plaintiff, as aforesaid, and the defendants wholly neglect to organize said company, and cause to be transferred by said company to the plaintiff, an amount equal in value to $10,000 of the capital stock of the said company for the articles sold and transferred by the plaintiff to the said defendants, as set forth in said schedule, and that the defendants wholly neglect and refuse to obtain employment for the plaintiff, as set forth in said agreement and neglect and refuse to furnish the plaintiff with the means, and defray the expenses necessary to procure other patents, as contemplated by said agreement, though the plaintiff had invented other improvements in the making

of artificial limbs at the time said agreement was executed. The plaintiff further alleged, that if the company had been organized as contemplated by the said agreement, it would have been of great value; much more than the par value thereof. That the plaintiff has demanded and requested of the said defendants that they comply with the said agreement, which they wholly neglect and refuse to do, and that by reason thereof, the plaintiff has sustained damage on account of the transfer of his said patent and inventions, as aforesaid, in the sum of $100,000, and in the sale and transfer of the articles mentioned in said schedule, in the sum of $20,000, and in not receiving employment by said company, as aforesaid, in the sum of $25,000, besides the sum of $350, balance of the said $500, with interest thereon.

Wherefore the plaintiff demanded judgment against the defendants for those sums, with interest thereon from the 11th day of July, 1865, besides costs.

The agreement, a copy of which was annexed to the complaint, was substantially as set forth therein.

The defendants, by their answer, denied all the allegations contained in the complaint, and the several parts and portions thereof, except as any or either of said allegations were thereinafter admitted. . For a further answer the defendants admitted the making of the contract or agreement mentioned in, and a copy of which was annexed to the complaint, and that the same was in tenor and effect substantially as set forth, and that the defendants paid to said plaintiff the sum of $150. They further admitted that the "United States Artificial Limb Company," the organization of which was contemplated in and by the terms of said agreement, was not organized as contemplated, for reasons well known to the plaintiff, and in which he acquiesced as next thereinafter stated. For a further answer and defense, the defendants alleged that shortly after the execution of said contract or agreement

Kirschmann *v.* Lediard.

and in or about the fall of the year 1865, the defendants informed the plaintiff that the organization of the company, contemplated by said agreement, could not for some time, if at all, be effected or accomplished, and the plaintiff, thereupon, expressed his desire to introduce said patents and improvements into immediate use, and to place the same before the public at once, and desired the defendants to permit him so to do; that after considerable negotiations between the parties, the defendants assented to said request, and it was thereupon understood and agreed by and between the parties to this action and the said agreement, that the agreement should be canceled, and in all things held for naught, and abandoned by the parties thereto, and that the plaintiffs should refund to the defendants the sum of $150 so paid, as aforesaid, and should pay to them $25, part of the expenses attending the examination of rights to be acquired under and in the making and execution of said contract or agreement, and that, in the mean time, and until the payment or refunding of the said sum of $175, the patent should remain in the hands of a third person, to be delivered to the plaintiff upon such payment. That immediately upon entering into the foregoing agreement, the plaintiff entered into, and from thence hitherto had continued, negotiations with other parties for the sale of said patent, improvements, and other property mentioned and described in the complaint, and the schedule annexed to said agreement, and the defendants and said plaintiff had, since the settlement aforesaid, and the agreement in connection therewith herein before mentioned, acted upon and with the understanding, and with and in the full faith and belief that said agreement first herein mentioned had been and was abandoned and held for naught. The defendants further alleged that the plaintiff had not paid or refunded to them the said sum of $175, but remained, and was still indebted to the defendants in said sum of $175, on account of the

premises aforesaid, which they claimed. And the defendants further alleged that the plaintiff had obtained and come into possession of said patent and other papers, including the agreement referred to in said complaint, without the knowledge or consent of the defendants, and without paying to the defendants the said sum of $175.

On the trial, at the circuit, when the defendants rested, the plaintiff, by his counsel, requested the court to direct a verdict for said plaintiff. The defendants, by their counsel, requested said court to submit the proof and the action to the jury. That court refused the request of the defendants, and directed the jury to find a verdict in favor of the plaintiff, for the sum of $83,942.50. Exception taken, and directed to be heard in the first instance at the general term. Judgment in the mean time suspended.

*Samuel J. Crooks*, for the appellants.

*Chas. N. Black*, for the respondent.

*By the Court*, INGRAHAM, P. J. The decision of the general term, when this case was last before us, was rendered on the ground that the contract on which the action was founded contemplated the formation of the corporation therein referred to by the defendants; and that the neglect or refusal of the defendants to organize such corporation rendered them liable to the plaintiff for such damages as he might sustain in consequence of such neglect. The contract was with the defendants, and was to sell to them "the patent held by the plaintiff, and with the further agreement to make such conveyances as were necessary to carry the agreement into effect, immediately upon the organization of the company; and in consideration thereof the defendants agreed to transfer to the plaintiff, an amount equal to fifty thousand dollars of the capital stock of the company, and to pay five hundred

dollars." It is evident, from this part of the contract, that the agreement was personal with the defendants, to be completed, on the formation of the company, by the defendants, when the transfer of the patent should be made to the company. The payment of $500 was to be made by the defendants. A similar contract was made in regard to the tools and other materials connected with the manufacture of the patented articles. Under this agreement the defendants were obligated to form the company, and if, after a reasonable time, the defendants refused or neglected to form the company, the plaintiff could recover, from the defendants, damages for such refusal or neglect. It can hardly be contended that the defendants could avoid the contract by such neglect, if they should afterwards think the same would be unprofitable.

The rule of damages adopted by the court was erroneous. The amount to be paid was $500 in cash, and $50,000 in stock of the new corporation, for the patent, and $10,000 in stock for the tools and materials. The court directed a verdict for the nominal amount of the stock. This was erroneous. The plaintiff was entitled to damages for a breach of the contract. The amount depended on the value of the stock after the corporation was formed, to be proven by showing what such value would have been, if the company had been formed, taking into consideration the property that was to be transferred, and also the fact that, by the breach of the contract, the plaintiff was released from the obligation to transfer the property. It may be that the stock would have been valuable, or it may be that the damages would be only nominal. Whatever it was, was to be ascertained by the jury, from the testimony. These principles are settled by the case of *Thomas* v. *Dickinson*, (23 *Barb.* 431.) In that case, the rule of damages was said to be the amount of the obligation to be delivered in payment. But there the plaintiff had transferred to the defendant the property he had

---

agreed to sell, and the court held the ·plaintiff could re-. cover the price at which the same was agreed to be sold. Here there has been no conveyance of the property, but the same is retained by the plaintiff, and he is only entitled to damages, and not to the nominal value agreed to be paid. (*S. C.*, 2 *Kern.* 364.) The rule of damages is to be fixed by proof of what the value of the stock would have been if the contract had been performed, over and above the property retained by the plaintiff. Had the property been transferred by the plaintiff, then, in the absence of any proof of value, the rule adopted on the trial would be the correct one; but that is not this case.

There was evidence of an agreement to rescind the contract, which should have been submitted to the jury. The parties agreed to surrender the papers, and further, that they should thereafter be held only as security for the money that had been paid to the plaintiff.

The verdict should be set aside, and a new trial granted, costs to abide the event.

[FIRST DEPARTMENT, GENERAL TERM, at New York, January 1, 1872. *Ingraham* P. J., and *Geo. G. Barnard*, Justice.]