## BEAN *v.* CLARK and others.

*(Circuit Court, N. D. New York.* March 12, 1887.)

1. PLEADING—ISSUE UPON INSUFFICIENT PLEADING.
   Having taken issue upon the plea, the complainant cannot afterwards assert that the facts alleged are not a good defense to the bill.

2. CONTRACT—PRIVITY—WHO BOUND.
   Complainant was bound by a contract, although he did not sign the written memorandum, and was not mentioned as a party in it, by which suits then pending between himself and defendant over the infringements of patents were to be dismissed, and defendants were to be licensed to use the patented inventions: it appearing that, though complainant did not himself sign the instrument, he participated in the negotiation which led to its being signed, was present at the signing, knew its terms, and intended to allow the parties who did sign to adjust the whole matter, as they were principally interested in effecting a settlement.

3. SAME—COMPLETED CONTRACT.
   A written contract, although inartificially drawn, obscure, and capable of different interpretations in several particulars, yet its provisions embracing, although in very inadequate terms, every matter which the parties had definitely agreed to, and the circumstances surrounding its execution being consistent with no other conclusion, must be regarded as a completed agreement or contract, and not merely as an agreement to agree.

In Equity.

*Hamilton Ward* and *Parkinson & Parkinson,* for defendants.

*J. R. Swan* and *Wood & Boyd,* for complainant.

WALLACE, J. The plea of the defendants goes to the whole bill. The complainant has taken issue upon the plea, and the case is now here upon the proofs. The only inquiry is whether the proofs establish the facts alleged in the bill. If they do, the defendants are entitled to judgment upon the plea, even though, had the plea been set down for argument, the facts averred would not authorize a judgment. Having taken issue upon the plea, the complainant cannot now assert that the facts alleged are not a good defense to the bill. Story, Eq. Pl. 697; *Rhode Island* v. *Massachusetts,* 14 Pet. 210; *Myers* v. *Dorr,* 13 Blatchf. 22; *Bogardus* v. *Trinity Church,* 4 Paige, 178; *Birdseye* v. *Heilner,* 26 Fed. Rep. 147. Equity rule 33, promulgated by the supreme court in 1842, declares that if upon an issue the facts stated in the plea be determined for the defendant they shall "avail him as far as in law and in equity they ought to avail him." It may be that this rule was intended to relieve a complainant from the hardship of having his suit barred when the facts stated are determined in favor of defendant, although they would not be a defense. But the language is consistent with the meaning that if the plea extends to part only of the matters of the bill the suit is to be barred so far as the plea extends; and if this is the correct interpretation, the rule does not change the pre-existing practice. The effect of rule 33 has not been considered by the supreme court in any reported case; and until that court passes upon the question, this court should adhere to the decisions in *Myers* v. *Dorr* and *Birdseye* v. *Heilner.*

Disregarding those averments of the plea which are only matters of legal conclusion, the substantive facts alleged are these: · That a suit was pending, brought by the defendants for infringement of patents belonging to them against parties who were the agents of Mast, Foos & Co., and a suit was also pending brought against these defendants by Mast, Foos & Co. and the present complainant, for infringement of patents belonging to the latter; that, in consideration of an agreement on the part of these defendants to dismiss their suit, Mast, Foos & Co. and the complainant "agreed forthwith to dismiss their aforesaid bill against the defendants, and to release and license them" to use their inventions for the term of their patents. The plea then avers that in pursuance of said contract, on or about the twenty-sixth day of August, 1882, an agreement in writing was entered into between the said parties, duly signed and executed by the defendants, and by said Mast, Foos & Co., with the approval and acquiescence of the complainant, with full authority from him to make the terms and conditions, and grant the rights, licenses, and privileges, therein provided for; that the said agreement was at the time fully understood and intended by the complainant, and all the parties thereto, to be a final agreement, executed, and in force and effect from the date thereof, and not a mere memorandum of an unexecuted agreement; that no alteration or modification thereof was ever agreed upon between the parties thereto; and that the said contract is still in full force, and the defendants have complied with, and ever have been and still are ready to comply with, all the terms and obligations thereof. By the contract the parties agree "that the suits now pending on both sides be withdrawn, and that each party take license from the other at a fixed price for shop-right, the consideration on both sides to be equal;" that they make uniform prices on pumps of the same size, and adopt the same discounts to dealers as the minimum prices below which they will not sell directly or indirectly, and as the cost of manufacture may change from time to time, and it may be deemed necessary to change the lists or discounts, then that such changes of lists or discounts shall be adopted by mutual consent; that each party is to maintain their own distinctive features in their pumps, and not imitate the pumps of the other; and that the licenses to each other shall convey the right to use only such features as are now used by each. The contract further recites as follows:

"It is also agreed by both parties to this agreement that neither will license to others the use of any of those patents to be used in the same territory in common with the other, but may license to their successors in business for a portion or all the territory, but with the same restrictions. The adjustment of this agreement, as to the forms to be entered upon the court records, shall be referred to the attorneys of both parties conjointly."

The issues of fact to which the proofs are addressed are—*First*, whether the instrument of August 26, 1882, was executed by Mast, Foos & Co. with the sanction and approval of the complainant; and, *secondly*, whether this instrument was intended by the parties to be a final agreement in force from its date, or merely a memorandum for an agreement thereafter

to be entered into by the parties. Although the complainant did not sign the instrument, and was not mentioned in it as a party, the proofs are clear that he participated in the negotiation which led to its being signed, was present when it was signed, knew its terms, and intended to allow Mast, Foos & Co., who were his exclusive licensees for the full term of his patent, and the parties mainly interested in the litigation with the defendants, to make such an adjustment with them as seemed at the time to be advantageous to all concerned. None of the parties considered it necessary for him to sign the instrument, but all assumed that Mast, Foos & Co. were the persons interested in adjusting all questions in controversy with the defendants, and had full authority to release them from liability for past acts, and license them to use the complainant's inventions in the future. This is plain, not only from the testimony as to what took place during the negotiations, and when the contract was signed, but also from the circumstance that the contract subsequently prepared and submitted by Mast, Foos & Co. to the defendants, and which complainant now insists was intended to be the final contract, was not to be executed by the complainant himself, but was one in which Mast, Foos & Co. and the defendants were named as the only contracting parties.

The purpose of the parties in reducing to writing what they had already agreed upon was to enter into a definitive contract covering the results of their oral agreement. Protracted negotiations had taken place between them. They had arrived at an understanding upon many matters which had been discussed. They had agreed that the pending suits to which they were parties should be discontinued, and that each should be released by the other from liability for past invasions or alleged invasions of the other's rights. They had also agreed that each should have the right to use the inventions of the other in the future for manufacturing such pumps as each had been manufacturing in the past, and that licenses should be exchanged by which each should convey to the other the privilege to do so, and that "the consideration upon both sides should be equal." They had also agreed to adopt uniform prices for pumps of the same sizes, and the same discounts as the minimum prices at which each should sell their pumps in the future. To the extent of the understanding thus reached, the agreement which was reduced to writing was intended to be a finality. As to other matters, they had not fully come to an understanding. Among other things, they had not concluded fully upon the terms and conditions of the licenses which were to be exchanged. Various details relating to the manner in which their future business relations were to be maintained had not been adjusted, and these were intended to be left open for subsequent adjustment. The instrument was not intended to be merely a written memorandum to serve as the basis of an agreement thereafter to be consummated. Upon its face it purports to be a concluded contract so far as its provisions extend. If, as is insisted for the complainant, the instrument was intended to be merely "an agreement to agree thereafter," there is no reason why it should have been reduced to writing and signed. It is silent as to any

future acts of formal execution. Although inartificially drawn, obscure, and capable of different interpretations in several particulars, its provisions embrace, although in very inadequate terms, every matter which the parties had definitely agreed to. For this reason, as also because the circumstances surrounding its execution are consistent with no other conclusion, it seems clear that it was intended to be a final and completed agreement so far as it related to the matters upon which the minds of the parties had met. The closing clause of the agreement indicates this with great significance.

It may be conceded that the language of the contract is so ambiguous in its provisions relating to licenses that it is incapable of any rational interpretation. It may be conceded, further, that the agreement does not of itself license the defendants to use the complainant's patented inventions, but at best only confers upon them the right to compel specific performance of the covenant to grant the license. It may be conceded that the contract is so vague and uncertain in this respect that specific performance could not be enforced. It may be conceded that the agreement, and the readiness of the defendants to perform it upon their part, would not operate as a discharge and satisfaction of the complainant's claim for damages for previous infringement of his patents. If the plea had been set down for argument, these points would have been open to discussion, and it is more than likely that the complainant would have prevailed. But the only question now is whether the facts set up in the plea are true. As they are found to be established by the proofs, the defendants must prevail.