ELECTRIC FIREPROOFING CO. v. SMITH et al.

(Supreme Court, Appellate Division, First Department. May 18, 1906.)

1. CONTRACTS—LEGALITY—CONTROL OF CORPORATION.

A contract, whereby plaintiff agreed to convey to a corporation, to be formed by defendants, property belonging to plaintiffs, in consideration for which plaintiffs were to receive a certain amount of stock of the corporation, was not invalid, on the ground that it precluded the board of directors from acting independently of the will of the contracting parties, in the absence of any showing that it was the intention of the parties to have the stock so issued.

2. STATUTES—QUESTIONS OF LAW AND FACT—LAW OF ANOTHER STATE.

A question as to the law of another state is one of fact, and such law must be pleaded and proved.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, §§ 380, 390.]

3. CONTRACTS—CONSIDERATION.

A contract, whereby plaintiffs agreed to sell their business to a corporation to be formed by defendant, in consideration of stock of the corporation, was not without consideration for defendants' engagement.

4. SAME—CERTAINTY.

A contract, requiring plaintiffs to sell their business to a corporation to be formed by defendants, in consideration whereof defendants agreed that there should be conveyed to plaintiffs a certain sum in cash and in stock, and that a specified amount of stock should be sold to realize cash for the payment, and to provide working capital, and that defendants should deposit the capital stock of a certain corporation with a trust company as a guaranty of their performance on or before a certain date, was not void for indefiniteness.

5. SAME—ACTION—QUESTION FOR JURY.
 The question as to what time was a reasonable time for performance by a party to a contract is one of law, where the facts are undisputed.

6. TRIAL—QUESTION FOR JURY—CREDIBILITY OF WITNESS.
 The rule that the credibility of a witness must be submitted to the jury does not apply, where his evidence is not contradicted directly nor by any ligitimate inferences, and it is not improbable, surprising, or suspicious.
 [Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 334.]
 Houghton, J., dissenting.

Appeal from Trial Term.

Action by the Electric Fireproofing Company against R. Wilson Smith and another. From a judgment in favor of plaintiff, and from an order denying a new trial, defendants appeal. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

Horace E. Parker, for appellants.
Austin E. Pressinger, for respondent.

PATTERSON, J. The plaintiff, a corporation, as party of the first part, entered into a contract under seal with the defendants Smith and Meldrum, copartners, and a corporation styled "Stillman & Hall, Limited," as parties of the second part, by which the parties of the second part agreed to cause to be formed a new corporation to take over the business, plant, and good will of the party of the first part. It is provided in the contract that, in consideration of the obligations entered into by the parties of the second part, the party of the first part will sell, assign, and transfer to the corporation to be formed all the patents owned by it for fireproofing of wood and other substances in the United States of America, together with the good will of the business then being carried on by it and the plant then being operated by it, and also all rights under license agreements granted to the party of the first part for operating under the electric fireproofing process, and all contracts for chemicals (of a certain character), and all unexecuted contracts for the treatment or sale of wood. In consideration thereof the parties of the second part agreed to form a corporation under the laws of the state of New Jersey on or before the 1st day of October, 1901, with capital stock of $2,250,000, of which $750,000 should be preferred "both as to dividends and par value," and the balance of $1,500,000 to be common stock subject to the preferred stock. The parties of the second part further agreed that there should be paid to the party of the first part on or before the 1st of October, 1901, as consideration for the transfer of the patents and other interests, the sum of $150,000 in cash, $50,000 in preferred stock of the corporation, and $1,500,000 in common stock, and that the corporation to be formed should purchase from the party of the first part all of the stock of merchandise on hand at the cost price, not to exceed $25,000; the same to be inventoried. It was further agreed that the capital stock of the proposed corporation should be used as follows:

"150,000 preferred stock to be sold to provide moneys for the cash payment to be made to the party of the first part. $150,000, preferred stock to be used to provide moneys for the erection of a new plant. $50,000 preferred stock to be issued to the party of the first part as part consideration for their trans-

fer of patents, etc.  $100,000 preferred stock to be issued to the parties of the second part to cover their expenses, bankers' and lawyers' fees and commissions on sale of stock and for their services.  $200,000 preferred stock to be retained in the treasury of the company for its use;  $100,000 preferred stock to be sold for providing working capital and for raising the necessary money to be paid to the party of the first part for its merchandise on hand.  $375,000 common stock to be issued to the party of the first part as part consideration for the said transfers of patents and other interests, as thereinbefore provided.  $1,125,000, common stock to be assigned to the parties of the second part by the party of the first part to be used by them in their discretion in the organization of the corporation. "

### It was further agreed that:

"If on the said 1st day of October, 1901, the parties of the second part shall have organized the said corporation and shall have at least $75,000 subscribed in cash towards the capital stock of said corporation and paid in in cash and deposited in the Trust Company of America or such other trust company as shall be mutually agreed upon between the parties hereto, but not sufficient to carry out the terms of the foregoing contract, then the time set for the closing shall be extended by and between the parties hereto until the 1st day of November, 1901."

### Then follow these provisions, viz.:

"The parties of the second part further agree upon the execution of this agreement to deposit with the party of the first part duly indorsed certificates for one hundred shares of the capital stock of Electric Fireproofing Company of Canada, Limited, having a par value of ten thousand dollars, to be held by the said party of the first part as a guaranty for the performance by the parties of the second part of the covenants and agreements hereinbefore contained, and to be deemed forfeited in the event of the failure of the parties of the second part to fulfill its agreement on or before the 1st day of October, 1901, time to be of the essence of the contract;  the same to be returned, however, by the party of the first part to the parties of the second part, upon the fulfillment of the terms of this contract on or before the 1st day of October, 1901, or (if said time be extended as above provided) on or before the 1st day of November, 1901.  And the parties of the second part further covenant and agree as follows:  In the event of their failure to comply with the terms and conditions of this agreement, as hereinbefore provided, the said R. Wilson Smith Meldrum & Company agree on their part that they will purchase five thousand dollars of the said stock of the Electric Fireproofing Company of Canada, Limited, deposited with the party of the first part as hereinbefore provided, and pay to the party of the first part therefor the sum of five thousand dollars in cash upon demand;  and the said Stillman & Hall, Limited, agrees on its part that it will purchase the remaining five thousand dollars of the said stock of the Electric Fireproofing Company of Canada, Limited, deposited with the party of the first part as hereinbefore provided, and pay to the party of the first part therefor the sum of five thousand dollars in cash upon demand."

This action was brought against Smith and Meldrum to recover the $5,000 mentioned in the last provision of the contract, upon the alleged failure of the defendants and the Stillman & Hall Company to organize the corporation.  The complaint alleges, among other things, that the defendants delivered to the plaintiff a certificate for 50 shares of the capital stock of the Electric Fireproofing Company of Canada, Limited; that they failed to carry out the terms of the agreement on their part to be performed; that the plaintiff was at all times ready and willing to perform its contract; that the certificate for 50 shares, under the terms of the agreement, became forfeited to the plaintiff; that subsequent to the default, and prior to the commencement of the action, to wit, on the 11th

day of February, 1903, the plaintiff duly tendered to the defendants the
said certificate for 50 shares of the capital stock of the Electric Fire-
proofing Company of Canada, Limited, and demanded that they pur-
chase the same from the plaintiff and pay therefor the sum of $5,000;
that the defendants refused to comply with the demand, and judgment
was demanded for the sum of $5,000 and interest.

It is unnecessary to refer particularly to the averments of the answer
or to the counterclaim therein set up, except to say that no evidence
was given of fraud or fraudulent representation on the part of the plain-
tiff as therein charged. It may also be remarked that the defense of ille-
gality of the contract is not specifically pleaded. But, as the case was
tried, that matter was considered germane to the issues; the defendants
insisting, in motions duly made to dismiss the complaint, that the con-
tract was unenforcible and void and against public policy, in that the
plaintiff and the defendants had taken upon themselves the right to
make a contract which provided that a New Jersey corporation should
be organized, and in the scheme "all the details not only as to the
amount of its capital stock, but also as to the discretion of the stock-
holders and of the directors to pass upon the validity of the sale which
it was intended to make of the properties, patent rights, and good will,
was taken away from them and lodged with the parties of the first and
second part." In other words, that the contract precluded the board of
directors of the proposed New Jersey corporation from acting inde-
pendently of the will of the plaintiff and of the defendants, and also took
away from the directors of the new corporation any discretion as to val-
uation of patents and good will. And it was further contended that the
contract was uncertain and indefinite in respect to the proposed pur-
chase of the stock, in that no time was mentioned therefor, and that un-
der section 22 of the personal property law of this state (Laws 1897,
c. 417, p. 511) it was necessary that the contract in question, looking as
it did to the sale of the stock of a corporation organized not under the
laws of the United States or of any state or territory thereof, needed
consideration to support it, and that no consideration for the purchase of
said stock is set forth in the amended complaint or proved on the trial;
and, further, that it was not alleged nor proven that the plaintiff per-
formed all of the conditions precedent looking to the enforcement of the
contract on the part of the defendant; and, further, that there was no ex-
press covenant by the plaintiff to complete the contract with the corpora-
tion, while there was an express promise of the parties of the second part
to organize the corporation upon the terms of the contract, and that a
covenant could not be implied binding the plaintiff; further, that the
contract was unenforcible for lack of definiteness, and the defendants
could not be held to it, and that the defendants were estopped by laches
from enforcing the stipulation which is the subject of the action; and,
again, it was asked that the complaint be dismissed, specifically upon the
following ground, viz.:

"That, if the contract relative to the purchase of this stock by the defendants
is enforcible, it must be within a reasonable time after October 1, 1901;
that no demand was made upon the defendants for the purchase of that
stock until February 11, 1903, and that by the testimony of Mr. Meldrum it
had been shown that for a period of seven months the stock in question was

worth par, and that he knew of two sales of stock during that time, one for 107 and the other for 105, and that the plaintiff is estopped from urging the position that the defendants have to purchase at the price in question; and that the defendants would be unduly prejudiced by being required to take the stock."

It appears in evidence given on the trial, and is uncontradicted and unquestioned, that the stock of the Canada corporation was deposited with the plaintiff; that it had a market value above par down to December 12, 1901; that there had been no depreciation of the market value at the end of April, 1902; that there was a depreciation between April and the end of that year, and there was a marked depreciation at the end of December, 1902; that there was no depreciation from the time of the making of the contract down to the latter part of the year 1902; that, at the time the stock was lodged with the plaintiff under the agreement, the market value of the stock was $5,000. The trial judge overruled the motion for a nonsuit, and also denied a motion made by the defendants to instruct the jury to render a verdict for them. The court submitted to the jury the question whether a demand by the plaintiff on the 11th of February, 1903, upon the defendants to take and pay for the stock was made within a reasonable time, and that was the only question left to the jury. They returned a verdict for the plaintiff, and from the judgment entered thereon, and from an order denying a motion for a new trial, the defendants appeal.

The refusal of the trial justice to grant a nonsuit or to direct a verdict for the defendant was proper as to all the grounds upon which those motions were made with the single exception of the last. The agreement between the parties was not unlawful or void as against public policy. The stipulation entered into by the defendants, and on which this action is brought, was one made by them independently of a corresponding obligation assumed by the Stillman & Hall Company, Limited; but the whole contract was between private parties for the accomplishment of an object legitimate in itself. It provided, among other things, for the detail of a scheme or plan for the organization of a new corporation with a fixed capital stock, which stock was to be issued for properties and rights, and when issued to be disposed of in a certain manner. The scheme is assailed on the ground that, if perfected, it would take away from the stockholders and directors of the corporation any and all discretion in the exercise of their judgment respecting the adequacy of the consideration to be given in exchange for the shares. Our attention has been called in argument to certain provisions of law of the state of New Jersey, under which the contemplated new corporation was to be created, and by which provisions of law it is insisted the contract must be condemned. But the law of New Jersey is neither pleaded nor proven, and what foreign law is is a question of fact and not of law. Genet v. D. & H. Canal Co., 163 N. Y. 173, 57 N. E. 297. The parties of the second part to the contract bound themselves to the plaintiff to form a new corporation. There is nothing to show that the parties to this private agreement did not honestly and in good faith believe that what was to be sold by the plaintiff was worth what it was to receive in exchange therefor, or, in other words, was not worth the whole capital stock to be issued by the projected new corporation. The legality of the

contract can be determined only by a resort to its terms; and, as stated in Lorillard v. Clyde, 86 N. Y. 387:

> "The presumption is in favor of the legality of contracts. The law does not assume an intention to violate the law, nor will an agreement be adjudged to be illegal where it is capable of a construction which will uphold it and make it valid."

It is also remarked in the opinion of the court in that case that:

> "It is claimed that the agreement is illegal, because it provides that property shall be taken to represent the whole capital, at a valuation fixed by the parties. We have not been referred to any statute which prohibits the organization of a corporation of the character of the one contemplated by this agreement, on the basis of chattel property contributed by the corporators. It cannot be assumed that the transaction was not bona fide, or that the valuation put on the vessels [property] was fictitious or extravagant. The value of the stock would depend upon the value of the property and business. The parties fixing the valuation were the only parties in interest, and we know of no principle of public policy which condemns an agreement between parties about to form a corporation, because by the agreement the capital stock is to be represented by property which they severally contribute at a valuation agreed upon between themselves. If it had appeared that the organization of the corporation in this way was a device to defraud the public by putting valueless stock on the market, having an apparent basis only, a different question would be presented."

In this case, from all that appears by the contract, it may well be that the parties intended to organize a corporation among themselves. At all events, that contract is not necessarily void as being against public policy, or for any other reason. The learned counsel for the appellant is entirely right in his contention, as an abstraction, that whenever a contract to form a corporation contemplates, as a necessary feature or concomitant of the scheme of organization, that the directors of the corporation when formed are to be deprived of their judgment and discretion in matters which come within the scope of their duty, it will be declared void, and the cases he has cited abundantly sustain that proposition. But the private contract between these parties is to be construed as relating to the formation of a corporation upon a lawful and honest basis, and it will not be assumed as matter of law that it was within the intention of the parties to organize a corporation, and have its stock issued in exchange for the property and rights of the plaintiff, unless the directors or stockholders of the corporation should approve and ratify, after inquiry, the scheme as detailed in the contract. What the defendants assumed to do was to form a corporation on a particular basis, and it will be presumed that every requirement of the law would be complied with in the organization of that corporation; nothing to the contrary appearing. The obligation assumed by the defendants to form the projected new corporation included that of seeing that the scheme embodied in the contract was lawfully carried out. The defendants took upon themselves the risk of being unable to organize a corporation, the stockholders or directors of which should assent to the scheme detailed in the contract, and the inference is not inevitable that the directors or stockholders of the proposed corporation were bound hand and foot before an organization was actually made.

Concerning other grounds upon which the defendants' motions to dismiss the complaint were based, it is sufficient to say that, according to

our understanding of the contract, a good consideration for the engagement entered into by the defendants with the plaintiff is shown. The plaintiff obliged itself to sell all its business and property, and, if that sale were consummated, the advantage to accrue to the defendants is apparent on the face of the contract. The plaintiff was bound to make the sale to the corporation, if that corporation were formed within the time named in the agreement. Even if the contract could not be specifically enforced by a corporation duly formed, the defendants would have their action for the breach, if the plaintiff failed to perform. We think it is indisputable that the plaintiff's change of position with respect to its own property, and its obligation assumed under the contract wth the defendants, furnished a consideration moving to the defendants. Nor is the contract void for uncertainty and indefiniteness. What each party was to do is plain, and we think there is an express promise contained in the contract that the plaintiff will transfer and convey its property and everything embraced within the contract on the formation of the contemplated new corporation.

We are of the opinion, however, that it was error to submit this cause to the jury on the question of the reasonableness of the time within which the plaintiff might enforce its claim on the defendants to purchase the shares. The defendants did not oblige themselves, by the terms of the contract, absolutely and in any event to come forward and purchase the shares of the Electric Fireproofing Company of Canada, which they had deposited with the plaintiff. They were only required to purchase on demand of the plaintiff. There is nothing in the contract which prevented the plaintiff from retaining the shares, if it desired to do so. On the failure of the defendants to perform their part of the contract within the stipulated time, the shares were forfeited to the plaintiff. If it elected to enforce the provision respecting a purchase, the contract specifically required that it should make a demand, and the defendants could remain quiescent until such demand was made. It seems to have been assumed at the trial, on both sides, that a demand must be made within a reasonable time, and that is undoubtedly the correct view. None was made by the plaintiff until about 16 months after its right to do so accrued. The trial judge left it to the jury to determine whether it was made within a reasonable time. But the defendants had moved to dismiss the complaint on the ground, among others, that, if the contract to buy the shares were to be enforced, it must be within a reasonable time after default, which occurred in October, 1901; that no demand was made for the purchase of the stock until February 11, 1903; that, by the testimony of Mr. Meldrum, it was shown that for a period of seven months the stock was worth par, and that he knew of sales of such stock during that time, one at 107 and another at 105, and subsequently declined. This we think was sufficiently definite as a statement of the proposition that the subject of reasonable time was a matter of law which it was the province of the trial justice to dispose of. Where the facts are all undisputed, the question of reasonable time is one of law. Wright v. Bank of Metropolis, 110 N. Y. 237, 18 N. E. 79, 1 L. R. A. 289, 6 Am. St. Rep. 356. It is true that all the facts and circumstances bearing upon the question were deposed to by Mr. Meldrum, one of the defendants; but the rule that the credibility of a witness, who is a party

to an action, must be submitted to the jury, is not an absolute and inflexible one, and where his evidence is not contradicted directly, nor by any legitimate inferences, and is not improbable, nor in its nature surprising or suspicious, there is no reason for denying to it conclusiveness. Hull v. Littauer, 162 N. Y. 569, 57 N. E. 102. The case cited was one where a defendant in an action for goods sold testified that the contract was entire and had been performed only in part. His testimony was not contradicted nor discredited, and it was held that under such circumstances a verdict directed in favor of the defendant by the trial court was proper. The learned judge presiding at the trial in the case now before us refused to consider the question of reasonable time as one of law, and we think this was error for which the judgment must be reversed.

Judgment and order reversed, and a new trial ordered, with costs to appellants to abide the event.

O'BRIEN, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur. HOUGHTON, J., dissents.