[No. 10491.   Department One.   January 4, 1913.]

FRANK M. WATSON, *Appellant*, v. EDWARD M. BAYLISS *et al.*, *Respondents*.[1]

CONTRACTS—ESSENTIALS—MEETING OF MINDS—CONTRACT TO FORM CORPORATION—EVIDENCE—SUFFICIENCY. Recovery cannot be had for breach of a contract to form a corporation, where none of the vital essentials for the organization of the corporation, enumerated by statute, had been agreed upon by the parties, as there was no meeting of minds upon all the essentials of the contemplated contract; and especially where there was no evidence of breach of the contract other than the fact that they did not incorporate.

Appeal from a judgment of the superior court for King county, Gay, J., entered January 19, 1912, dismissing an action on contract, after a trial to the court.   Affirmed.

*Holzheimer & Herald*, for appellant.

*Tucker & Hyland* and *McClure & McClure*, for respondents.

GOSE, J.—This is an action for damages for an alleged breach of a parol contract.  The plaintiff has appealed from an adverse judgment.  It is alleged:

"That on or about the 24th day of May, A. D., 1909, in the city of Seattle, state of Washington, the defendant, Edward M. Bayliss, with the design of deceiving, cheating and defrauding the plaintiff and of appropriating to his own use and to the use of said community certain money of the plaintiff, hereinafter mentioned, deceitfully and fraudulently, by inducements and promises hereinafter mentioned, persuaded and induced the plaintiff to purchase a certain show or exhibition known as 'The Land of the Midnight Sun,' consisting of its scenery, fittings, appliances, machinery and other personal property of said show, which was then located in the city of Portland, state of Oregon; and the said defendant, then and there, as a part of said design, deceitfully and fraudulently, undertook and agreed with the plaintiff to act as the special agent of the plaintiff, to go from the city of Seattle to

[1]Reported in 128 Pac. 1061.

the city of Portland, and there, as plaintiff's special agent, purchase for the plaintiff said show or exhibition for the lowest price for which the owner thereof would sell the same; and the said defendant, then and there, as a part of said design, further deceitfully and fraudulently agreed with the plaintiff that he, the said defendant, would immediately upon the purchase of said show join with and assist the plaintiff in the creation and organization of a private corporation for the purpose of taking over said show and of producing and exhibiting the same at a certain place known as 'Pay Streak,' in the Alaska-Yukon-Pacific Exposition, held in the city of Seattle; and said defendant, then and there, as a part of said design, deceitfully and fraudulently, further promised and agreed with the plaintiff to subscribe for and purchase certain shares of the capital stock of said corporation, of the actual value of two thousand ($2,000) dollars. And the said defendant, then and there, as a part of said design, deceitfully and fraudulently, further agreed with the plaintiff to give him, or said corporation, the advantage of his special knowledge and skill in connection with the organization, construction, installation, operation and starting of said show or exhibition, and to instruct the plaintiff in such matters; that said defendant was the inventor of said show or exhibition and had sole and exclusive knowledge of its construction and the method of its installation and operation; and the said defendant well knew that the plaintiff could not construct, install or operate said show without his co-operation and assistance; that each and all of said agreements were deceitfully and fraudulently made for the purpose of inducing the plaintiff to purchase said show or exhibition and to advance and expend, and the plaintiff did, in reliance upon and in consideration of said premises, advance and expend large sums of money, hereinafter mentioned, for exhibition concessions, construction of a building for said show on said 'Pay Streak' and expenses in construction, installation and operation thereof."

It is further alleged that the appellant, in pursuance of the contract, immediately upon the purchase of the show expended a large sum of money preparatory to opening and presenting the exhibition; that the respondent at all times

failed and refused to join with and assist the appellant in the organization of a corporation, or to subscribe for or purchase any shares of the capital stock of such a corporation, or to give the appellant or the corporation any assistance whatever toward the accomplishment of the end in view; that, by reason of the respondent's acts, the appellant was unable to organize any corporation or to finance the show; and that it was agreed that, in the organization of the corporation, the appellant was to have "at least fifty per centum of the capital stock of said corporation;" and that, by reason of the acts and omissions of the respondent, the appellant lost his share of the reasonable profits to be derived from the show, which it is alleged would have been $5,000.

Our statute, Rem. & Bal. Code, § 3679, provides that any two or more persons, who may desire to form a company for one or more of the purposes specified in § 3677, shall make and subscribe written articles of incorporation; that these articles shall state (1) the corporate name; (2) the objects for which it is formed; (3) the amount of its capital stock and the number of shares of which it shall consist; (4) the time of its existence; (5) the number of trustees and their names; and (6) the name of the locality in which the principal place of business of the company is to be located. There is no allegation that any of these matters were agreed upon, other than the object of the corporation. It is elementary that, without a meeting of minds upon all the essentials of a contemplated contract, there is no binding agreement. Our statute treats all the matters enumerated above as essential to the organization of a corporation. Whether one or two of these elements might be omitted we need not inquire. It is obvious, however, that the amount of capital stock, the number of shares of which it shall consist, and the number of trustees and their names, are among the vital essentials of a corporation. It is through its trustees that a corporation is managed, and its capital stock is the very basis of its being.

"If any portion of the proposed terms [of the contract]

are not settled or a mode agreed upon by which they may be settled, there is no agreement." 9 Cyc. 245.

See, also, 30 Cyc. 357; *McDonnell v. Coeur D'Alene Lum. Co.*, 59 Wash. 698, 110 Pac. 13; *Pasco Reclamation Co. v. Cox*, 70 Wash. 549, 127 Pac. 107; *Loewenberg v. De Voigne*, 145 Mo. App. 710, 123 S. W. 99.

In the *Loewenberg* case, in considering a similar question, the court said:

"How would the court ascertain the essentials which must be in articles of association, from a contract that neither specifies the amount of capital or the number of shares into which it should be divided, nor the amount proposed to be paid in on incorporation? Who shall constitute the first board of directors? Even the division of the shares among the incorporators or subscribers is unnamed. These are all among particulars which our statute requires shall be set out in the articles."

We attach no consequence to the fact that the appellant characterizes the breach as having been born of an intent to cheat and defraud. Brushing aside the characterization of the respondent's conduct, there is an attempt to allege a contract to form a corporation, and the breach of the contract by the respondent to the appellant's damage.

The evidence as to the contract and its breach is no less indefinite. The only evidence bearing upon the refusal of the respondent to participate in the organization of a corporation is the following: "Q. Did Mr. Bayliss ever incorporate with you? A. No, sir." This is far from proving a breach of the alleged agreement. Appellant's witness Murray said that there was no agreement as to who should be trustees. The appellant testified that Murray was "to put in $3,000." For aught that appears in the evidence, the tentative arrangement to incorporate may have failed of consummation from the refusal of Murray to unite, or from the inability of the parties to agree on the essentials of the enterprise.

The judgment is affirmed.

Mount, C. J., Chadwick, Crow, and Parker, JJ., concur.