[No. 11999.   Department One.   August 4, 1915.]

W. E. WELDON *et al.*, *Appellants*, v. CHARLES DEGAN *et al.*, *Respondents*.[1]

CONTRACTS—CERTAINTY—CORPORATIONS — AGREEMENT TO ORGANIZE. An agreement to organize a corporation, with a stated capital stock, to be equally divided among the parties, each of whom agrees to forfeit $2,500 in case of his default in completing the agreement, is not sufficiently definite in its terms to be binding to the extent of recovery of damages for its breach.

EQUITY—MAXIMS.   The maxim, *Id certum est quod certum reddi potest*, cannot be applied to supply by parol that which the law presumes to have been purposely omitted from a written contract.

EVIDENCE—PAROL—TO VARY WRITING.   Where a written agreement to organize a corporation is lacking in everything other than the purpose of the organization, the amount of capital stock, and the proportion in which it was to be contributed, resort cannot be had to oral evidence of a prior or contemporaneous agreement supplying the statutory essentials for the formation of a corporation prescribed by Rem. & Bal. Code, § 3679.

Appeal from a judgment of the superior court for King county, French, J., entered November 26, 1913, upon granting a nonsuit, dismissing an action on contract.   Affirmed.

*McClure & McClure* and *Walter S. Osborn*, for appellants.
*Brightman, Halverstadt & Tennant*, for respondents.

CHADWICK, J.—The plaintiffs and the defendant Charles Degan, after some preliminary negotiations, met at the city of Chicago, Illinois, on the 18th day of September, 1911, and signed the writing following:

"It is hereby agreed and understood by the signatories of this document that a corporation will be formed on or about the first day of May, 1912, with a proposed capital of 80M. to be contributed equally by the signers hereto, for the purpose of manufacturing shoes.   It is further understood that each signer holds himself firmly bound to the others to consummate this corporation, and in default of completing the

[1]Reported in 150 Pac. 1184.

agreement and declining to become a member of the corporation, as above agreed, forfeits to the steadfast signatories the sum of twenty-five hundred dollars. In witness hereunto we set our hands and seal this 18th day of September, 1911."

In March, 1912, the defendant Degan notified the plaintiffs that he would not become associated with them in the suggested enterprise. A formal demand was made upon him, and upon his refusal, this action was brought to recover the sum of $2,500 as liquidated damages.

It is the theory of the plaintiffs that the contract is binding under the maxim, *Id certum est quod certum reddi potest.* Plaintiffs alleged in their complaint, and accordingly submitted testimony to prove, that it was understood, at the time the writing was executed, that the place of business of the corporation was to be Milwaukee, Wisconsin; that each of the parties would be directors of the company; that the capital stock of the corporation would be $100 per share. Two of the plaintiffs testified to actual damages. One of them sold his home in the state of Texas and arranged to move to the city of Milwaukee, and he actually paid out the sum of $250 making preparations for the new venture. The other expended about $300 for the same purpose. They also proved that defendant was a man of long experience and influence in the shoe manufacturing business, and that his services would have been of great value to the proposed concern.

When the plaintiffs had rested their case, the court sustained a motion for a nonsuit, upon the theory that the writing was not a contract, in that it was too indefinite and uncertain in its terms to warrant a recovery. From the judgment entered upon the motion, plaintiffs have appealed.

Upon the main question, counsel submit a number of authorities to sustain the proposition that,

"An agreement cannot be held uncertain if the courts can see what the parties intended and enforce the same. An agreement drawn up by illiterate persons will not be held

uncertain, if it is possible for the court to ascertain their meaning. Absolute certainty is not required. That is certain which may be rendered certain." 9 Cyc. 250.

It is said that the words "organize" and "organization," when used with reference to an agreement to form a corporation, mean and include all of the incidents pertaining to the organization of such corporation, including the names and number of directors, the names of the officers, the division of the capital stock, the adoption of by-laws, as well as all other incidents necessary to endow the legal entity with a capacity to transact the business for which it was created; the words "form" and "consummate" are declared to be words of equivalent meaning, and under this rule and the maxim relied on, it was competent for the plaintiffs to allege and prove that it was the intention of the parties to do business at Milwaukee; that each of them were to be directors, and the other items pertaining to the organization to which we have referred. To sustain this proposition, plaintiffs put their principal reliance upon the cases of *Electric Fireproofing Co. v. Smith*, 99 N. Y. Supp. 37; *Childs v. Smith*, 55 Barb. (N. Y.) 45; *Kirschmann v. Lediard & Ree*, 61 Barb. 573, and certain Wisconsin cases, being *Kipp v. Laun*, 146 Wis. 591, 131 N. W. 418; *Inglis v. Fohey*, 136 Wis. 28, 116 N. W. 857, and *Becker v. Holm*, 89 Wis. 86, 61 N. W. 307, in which other cases relied on are cited.

It would serve no purpose for us to review in detail all of these authorities. It is enough to say that the cases most in point are the three New York cases. These were cases where a party having a salable thing entered into a contract with other parties to form a corporation, the parties of the second part assuming the burden of perfecting the organization, giving the plaintiff a certain number of shares of the capital stock. It would seem to us that the conclusion would necessarily follow, upon suit brought by the party having the salable thing to recover damages for breach of contract, that he would be entitled to recover, and that defendants

would not be heard to say that the contract could not be enforced because all of the details attending the formation of the corporation were not set out in the agreement, for, by the terms of the engagement, he would have nothing to do with the detail of organization.

This is a case between parties having the same interest and the same relation to the proposed concern. The contract is lacking in everything other than the purpose of the organization, the amount of capital stock, and the proportion in which it was to be contributed. There is nothing in its terms that would bind a minority of the number signing the writing to the organization of a corporation under the laws of any particular state, if he were unwilling and refused to consent thereto or to any other detail that was omitted.

The place where a corporation is organized is, or may be, a matter of great importance, for it is a matter of common knowledge, of which courts may take judicial notice, that the laws of the various states vary widely in defining the rights and liabilities of stockholders. They likewise differ in providing for the number and responsibilities of trustees or directors. In some of the states there is no personal liability attaching to a subscriber to the capital stock of a corporation. In others a subscriber is liable upon his subscription. In some there is a double liability.

It seems to us that the agreement is not sufficiently definite in its terms to be binding upon any one of the parties to the extent that they could be called upon to pay damages to the other parties, either actual or liquidated. In the case of *Rudiger v. Coleman*, 98 N. Y. Supp. 461, there was an agreement that

"A corporation shall be formed for the purpose of quarrying and selling granite, and the execution of contracts in which granite is used, consisting of all the parties hereto, in accordance with a certificate and by-laws, a copy of which by-laws is hereto annexed."

An action was brought for specific performance. It was held:

"The judgment cannot be sustained. It is not within the province of equity jurisdiction to compel the specific performance of a contract to form a corporation under the circumstances disclosed by this case. The parties were unable to agree upon the terms for the formation of such corporation, and are now hostile and unfriendly. Annexed to the agreement there is a proposed set of by-laws, but they contain little, if anything, showing the terms and details of the proposed incorporation. It follows that the judgment could not be enforced if the parties refuse to comply with it, and for that reason is objectionable in form and substance."

The so-called contract is no more than an agreement for an agreement, or, in other words, an agreement to do something which requires a further meeting of the minds of the parties and without which it would not be complete, and to which any one of the parties might object if proposed. To strip the case down to its framework, the agreement relied on is nothing more, and appellants' argument rests entirely upon the idea that a minority of those signing it would be bound by the subsequent will of the majority pending the organization.

For these reasons, the maxim quoted does not apply. This maxim may be resorted to to clarify a contract—to gather the true intent of the parties from what is expressed—but to invoke it to supply a material omission would be to pervert and misapply it. Its use is to ascertain the meaning of the words and terms employed, not to make a contract.

If a contract be uncertain in any of its essentials and can be made certain by reference to a certainty, it is enough.

"For instance, although every estate for years must have a certain beginning and a certain end, 'albeit there appear no certainty of years in the lease, yet, if by reference to a certainty it may be made certain, it sufficeth.' " Broom, Legal Maxims (8th ed.), p. 478. Co. Litt. § 58, 45 b.

But although it is alleged, and the plaintiffs have so tes-
tified, that the place of organization and the place of doing
business, as well as the manner of doing it, the par value of
the shares, and the directors, had been previously or con-
temporaneously agreed upon, not one of these details were
mentioned in the contract. The resort to oral testimony is
not had to make certain something that was agreed upon
and inartificially expressed, but to supply something alleged
to be agreed upon and which, in the absence of a showing of
fraud or mistake, the law will presume was omitted purposely.
To illustrate: let us suppose that the writing was complete
in all things except the place of organization; that it actually
provided that the concern was to do business in Milwaukee.
In such case, the right of the parties to show that the parties
intended to do business in Milwaukee, Wisconsin, would not
be questioned. The uncertainty would be made certain by
reference to a certainty.

"So, to be enforceable, a contract to enter into a future
contract must specify all its material and essential terms,
and leave none to be agreed upon as the result of future ne-
gotiations." 6 R. C. L., p. 617, par. 38.

"The contract must be certain and unequivocal in its es-
sential terms either within itself or by reference to some
other agreement or matter. In addition to a definite promise,
the subject-matter of the agreement must be expressed in
such terms that it can be ascertained with reasonable cer-
tainty. A contract which is so uncertain in respect of its
subject-matter that it neither identifies the thing by de-
scribing it, nor furnishes any data by which certainty of
identification can be obtained, is unenforceable." 6 R. C. L.
p. 644, § 59.

Nor do the cases relied on by appellants violate this doc-
trine. They admit it. After reciting one of the exceptions
to the rule that excludes parol evidence when offered to add
to, modify, or contradict a writing,

"If the writing is shown by competent evidence to have
been a mere part of an entire oral contract, and the oral

contract is not inconsistent with and does not contradict the writing, and the writing does not on its face plainly purport to contain the entire contract, then parol evidence of the oral contract is admissible;"

the supreme court of Wisconsin says, in the case of *Kipp v. Laun, supra:*

"A case cannot be brought within the first exception by oral evidence of the language used by the parties in their negotiations or in their alleged contract, where relief is not sought on the ground of fraud or mistake and the parties stand upon the contract and do not seek a rescission or reformation."

So in *Bean v. Clark,* 30 Fed. 225, a case relied on and of which counsel says,

"It was held that a memorandum though *inartificially drawn, obscure and capable of different interpretations in several particulars, yet its provisions embracing though in very inadequate terms, every matter which the parties had definitely agreed to* and the circumstances surrounding its execution being consistent with no other conclusion, is a completed agreement and not merely an agreement to agree."

We have italicized the words which mark the distinctions between this case and those cited by appellants. Here there is nothing obscure or capable of different interpretations, nor does the writing contain every matter upon which it is now insisted that there was a definite agreement. It is a clear case of omission, and no fraud or mistake being alleged, we are held, in construing it, to the general rule.

Courts may find out and declare a contract if there be any ground upon which to rest its inquiry, but it cannot assume to arrange the details of its performance, unless such details are of such nature that it can properly fix and enforce them. The only exception to the rule, now occurring to us, seems to be where the parties have entered into a contract for a certain term, agreeing to renew it at the end of the term upon terms to be then agreed to. In such a case, a court of equity will, after performance and in the event of a

refusal to renew or disagreement as to details, define the relation of the parties for the extended term. It will treat the details as a matter of form and not of substance, and will settle them "if they are of a nature which courts may properly fix or settle." *Joy v. St. Louis*, 138 U. S. 1; *Central Trust Co. v. Wabash, St. L. & P. R. Co.*, 29 Fed. 546; *Slade v. City of Lexington*, 141 Ky. 214, 132 S. W. 404, 32 L. R. A. (N. S.) 201.

While it is insisted by counsel for appellant that the case of *Watson v. Bayliss*, 71 Wash. 499, 128 Pac. 1061, is to be distinguished upon its facts, yet we are of the opinion, nevertheless, that the rule announced applies with equal force to the facts in this case. We cannot agree with counsel that, although there were omissions in that case, the contract in this case contained the "vital essentials" of a contract, "And in addition, the number and personnel of the board of directors and the place of business of the corporation, and the par value of the capital stock." The things "in addition" are not in the contract and are only brought into the case by violating the rules to which we have referred, and in so far as the place of business is concerned, by violating the further rule that, in the absence of a stipulation to the contrary, the law will presume that the contract was to be performed in, and with reference to the laws of, the state where made.

Neither is the case to be distinguished because the contract in the *Watson* case was oral. If the contract were sufficiently definite it would make no difference whether it was oral or written. A contract is a meeting of minds. A writing is not a contract; it is no more than evidence of a contract. In the *Watson* case, it was held that a party cannot be made to answer in damages for a failure to consummate a formal contract, if the parties are thereafter unable to agree upon the essentials of the enterprise. We said, referring to our own statute, which we opine does not change the principle,

· "Our statute, Rem. & Bal. Code, § 3679, provides that any two or more persons, who may desire to form a company for one or more of the purposes specified in § 3677, shall make and subscribe written articles of incorporation; that these articles shall state (1)· the corporate name; (2) the objects for which it is formed; (3) the amount of its capital stock and the number of shares of which it shall consist; (4) the time of its existence; (5) the number of trustees and their names; and (6) the name of the locality in which the principal place of business of the company is to be located. There is no allegation that any of these matters were agreed upon, other than the object of the corporation. It is elementary that, without a meeting of minds upon all the essentials of a contemplated contract, there is no binding agreement. Our statute treats all the matters enumerated above as essential to the organization of a corporation. Whether one or two of these elements might be omitted we need not inquire. It is obvious, however, that the amount of capital stock, the number of shares of which it shall consist, and the number of trustees and their names, are among the vital essentials of a corporation. It is through its trustees that a corporation is managed, and its capital stock is the very basis of its being.

" 'If any portion of the proposed terms [of the contract] are not settled or a mode agreed upon by which they may be settled, there is no agreement.' 9 Cyc. 245.

"See, also, 30 Cyc. 357; *McDonnell v. Coeur D'Alene Lum. Co.*, 59 Wash. 698, 110 Pac. 13; *Pasco Reclamation Co. v. Cox*, 70 Wash. 549, 127 Pac. 107; *Loewenberg v. De Voigne*, 145 Mo. App. 710, 123 S. W. 99.

"In the *Loewenberg* case, in considering a similar question, the court said:

" 'How would the court ascertain the essentials which must be in articles of association, from a contract that neither specifies the amount of capital or the number of shares into which it should be divided, nor the amount proposed to be paid in on incorporation? Who shall constitute the first board of directors? Even the division of the shares among the incorporators or subscribers is unnamed. These are all among particulars which our statute requires shall be set out in the articles.' "

It will thus be seen that if the contract be lacking in any of the essentials—and it is not denied that the writing in this case is so lacking and is not complete without oral evidence—it is not binding upon the parties. The only difference between the *Watson* case and the case at bar is, that in the *Watson* case an improper and ulterior motive, at the time the contract was entered into, is charged to the defendant. In this case, the wrongful intent to breach the contract is alleged to have been subsequently formed and acted upon.

We have given the case of *Watson v. Bayliss* unusual consideration because of the insistence of the eminent counsel for appellants, but we are unable to distinguish it. Upon the general principle, therefore, that the maxim quoted cannot be resorted to to supply an omission of elements essential to a contract, and upon the authority of our own decision, the judgment of the lower court is affirmed.

MORRIS, C. J., CROW, and PARKER, JJ., concur.