OCALA COOPERAGE COMPANY, A CORPORATION, *Plaintiff in Error*, v. FLORIDA COOPERAGE COMPANY, A CORPORATION, *Defendant in Error*.

1. Where parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of the minds and consequently no contract, while the agreement is incomplete.

2. Where parties intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed.

3. While it is true that where parties orally agree upon the terms of a contract, and there is a final assent thereto, so that no variation can be introduced into the writing except by mutual consent, the mere suggestion or intention to put the agreement in writing at a subsequent time is not, of itself, sufficient to show that the parties did not intend the parol contract to be regarded as complete and binding without being put in writing; but where it appears that the parties or either of them. intended that the contract should be reduced to writing so that its terms would be fully understood and definitely stated in the writing, the contract will not be regarded as complete or binding until it is reduced to writing and acquiesced in by both parties.

This case was decided by the court En Banc.

*George M. Powell,* for Plaintiff in Error;

No appearance for Defendant in Error.

## ON REHEARING.

PER CURIAM.—A petition for rehearing has been filed herein. The statement in the opinion that it does not "clearly appear" that the general manager of the defendant corporation had authority to bind the company in the manner claimed, is justified by a consideration of all the evidence and the law of agency. But the point decided in the case is that Mr. Scovel's letter of Feby. 28th, referred to as the basis of the action and set out at length in the opinion, when considered as an entirety, is not a sufficient memorandum of an actual contract, in that it does not contain a distinct and complete statement of the

396    SUPREME COURT OF FLORIDA.

Ocala Cooperage Co. v. Florida Cooperage Co.—Opinion of Court.

agreement as alleged, but it evidences negotiations not fully understood and not finally agreed on. This determination renders not pertinent the proposition that a letter repudiating a contract may satisfy the requirement of the statute of frauds that a memorandum of the contract shall be in writing duly signed.

The president and general manager of the plaintiff company, Mr. E. H. Mote, testified that during February, 1908, "he met Mr. Wilson and Mr. Scovel president and general manager and secretary respectively, of defendant, Florida Cooperage Company; that a proposition was made by them to him to purchase the output of the plaintiff's plant, to-wit: thirty thousand spirit barrels; that he took this proposition under advisement for the night; that the next day Mr. Scovel called around to the hotel and the deal was consummated, closed; that Mr. Wilson was present on the occasion of the first conference, and that the negotiations were discussed in his presence; that he said he had to go to Savannah in a short time; that all the details were arranged and finally and fully agreed upon, upon that occasion; that when he left Mr. Scovel he went home to Ocala for the purpose of lining up the business and getting ready to deliver these barrels." The other testimony does not appear to be material here.

The following letters from this witness who was the president and general manager of the plaintiff company were offered in evidence:

"Ocala, Florida, Feb. 21, 1908.
Mr. G. J. Scovel, Gen. Mgr.,
        Jacksonville, Fla.
Dear Sir:

In sending memorandum contract, please make it full and explicit so that there may be no possible chance for misunderstanding. Anything that should not go into the

VOL. 59, JANUARY TERM, 1910.    397

Ocala Cooperage Co. v. Florida Cooperage Co.—Opinion of Court.

contract, please write me fully about in person, as I wish to be in touch with the entire situation, so as to act intelligently.

(Signed)    E. H. Mote, G. M."

"Ocala, Florida, Feb. 25, 1908.

Mr. G. J. Scovel,
        Jacksonville, Fla.

Dear Sir,—

I had hoped to have heard from you in reference to letters written you. I will be pleased to hear from you by return mail. Kindly send contract as we understand you would like it to go into effect March the 1st.

Yours very truly, (Signed)    E. H. Mote."

"Ocala, Florida, Feb. 27, 1908.

Florida Cooperage Co.,
        Jacksonville, Fla.

Gentlemen,—

How about the contract. Have not heard from you. Please let us hear by next mail.

Yours truly, (Signed)    E. H. Mote."

"Ocala, Fla., Feb. 28, 1908.

Messrs. Florida Cooperage Company,
        Jacksonville, Fla.

CONTRACT.

Gentlemen,—

Yours of the 27th received and carefully noted. Please send the contract at the earliest possible moment as we understand same is to go into effect on March 2nd, and we would like to have time to look it over in the meantime.

Yours very truly,
      Ocala Cooperage Company, By E. H. Mote,
           President and General Manager."

The letter of Feby. 27, from the general manager of the defendant company to the president and general manager of the plaintiff company referred to in the opinion is as follows:

"Jacksonville, Fla., Feb. 27, 1908.

Mr. E. H. Mote, Prest.,

  Ocala Cooperage Co.,

    Ocala, Fla.

Dear Sir,—

We have your favor of the 25th inst. We would have replied to this yesterday, but hoped to hear from Mr. Wilson to-day. We submitted contract between our company and yours to Mr. Wilson for his approval, and he has not yet returned same. We expect to hear from him certainly to-morrow, and we will forward the same to you at once.

Yours truly, (Signed) G. J. Scovel, General Manager."

This letter clearly indicates that negotiations between the parties were pending, and that the agreement between them was to be in writing. Mr. Scovel's letter of Feby. 28, set out in the main opinion upon which this action is brought shows that the negotiations were broken off and that an actual agreement of the parties was never reached or reduced to writing. Where parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of the minds and consequently no contract, while the agreement is incomplete. And where parties intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed. McCrimmon v. Brundage, 53 Fla. 478, 43 South. Rep. 431; 9 Cyc. 280, and cases cited.

While it is true that where parties orally agree upon the terms of a contract, and there is a final assent thereto,

so that no variation can be introduced into the writing except by mutual consent, the mere suggestion or intention to put the agreement in writing at a subsequent time is not, of itself, sufficient to show that the parties did not intend the parol contract to be regarded as complete and binding without being put in writing; but where it appears that the parties or either of them intended that the contract should be reduced to writing so that its terms would be fully understood and definitely stated in the writing, the contract will not be regarded as complete or binding until it is reduced to writing and acquiesced in by both parties.

From the letters of Mr. Mote, the general manager of the plaintiff company, it plainly appears that the terms of the proposed contract were not fully agreed on if understood, and also that the agreement was to be reduced to a "memorandum contract."   The testimony of Mr. Mote above quoted is not wholly inconsistent with this conclusion.

The evidence in this record discloses no agreement upon which this action can be maintained, independent of the insufficiency of Mr. Scovel's letter of Feby. 28th, as a memorandum of writing under the statute of frauds, which was the issue made in the trial court and disposed of in the main opinion.

The assertion in Mr. Scovel's letter of Feby. 27th, that "we submitted contract between our company and yours to Mr. Wilson for his approval" and the statement in Mr. Scovel's letter of Feby. 28th, that "we submitted to Mr. Wilson a contract between this company and your company, whereby we agreed to purchase" &c. taken in connection with other portions of the letters, and read in the light of the circumstances under which they were written, clearly mean the proposed contract and not an actual completed agreement.

The letter of the defendant's general manager dated

Feby. 28th, and set out in the main opinion as a copy of the cause of action, read by itself *as an entirety* or taken in connection with the other letters copied herein, does not contain a statement of the completed contract alleged in the declaration, but evidences the pendency of negotiations that were terminated by the letter. There being no completed agreement between the parties there is no cause of action as alleged; and the letter relied on to supply the necessary evidence of the agreement under the statute of frauds, is merely evidence of negotiations that did not result in the meeting of the minds of the parties; consequently there is in fact no contract of which the letter sued on could be a note or memorandum in writing.

A rehearing is denied.

All concur.