[No. 15273.   Department Two.   July 21, 1919.]

CHINOOK LUMBER & SHINGLE COMPANY, *Appellant,* v. McLANE LUMBER & SHINGLE COMPANY, *Respondent.*[1]

SALES (10, 12)—OFFER AND ACCEPTANCE—CERTAINTY—CONTRACTS BY CORRESPONDENCE.  Where the seller answered an inquiry of buyer wanting star shingles at $2 per thousand, by saying that it had sold out all its star shingles, but "quote two fifteen additional business," the expression is too uncertain to be the basis for a binding contract.

SAME (10, 12)—Where the seller answered an inquiry of buyer wanting five car loads of star shingles at $2 per thousand by saying that it had sold out all its star shingles, but "quote two fifteen additional business," to which the buyer replied asking seller to book it for five cars at $2.15 per thousand, and "advise by return wire how soon can ship," to which no reply was made, there was no agreement as to the number of cars or time or place of shipment, and no closed contract.

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered October 7, 1918, upon sustaining a demurrer to the complaint, dismissing an action on contract.   Affirmed.

*Alexander & Bundy,* for appellant.

*O'Neil, Spaulding & Stuart,* for respondent.

[1] Reported in 182 Pac. 625.

BRIDGES, J. — This was an action for damages for breach of an alleged contract for the sale of five cars of shingles. The action is based entirely on certain telegrams and letters passing between the appellant and respondent, which are as follows:

"November 5, 1917.
"The McLane Lumber & Shingle Co.,
    "Kelso, Washington.
"Trying get you by telephone but no success. Want one to five cars Stars at two dollars including large car three hundred or more two such go sixty seven and half cent rate and seventy one and half cent respectively. Advise return wire what can handle all for southwest.    Chinook Lumber & Shingle Co."

"Kelso, Wash., Nov. 5, 1917.
"Chinook Lumber & Shingle Co.,
    "Seattle, Wash.
"Stars all sold out. Quote two fifteen additional business.    McLane Lumber & Shingle Co."

"Nov. 6, 1917.
"McLane Lumber & Shingle Co.,
    "Kelso, Washington.
"Your wire fifth. Book us five cars stars two fifteen. Advise return wire how soon can ship. Prefer quick and via N. P. Laurel, but can use part GN Whitefish or O. W. Cheyenne. Medium cars or average. Advise price and quantity standards straight cars or with stars.
    "Chinook Lumber & Shingle Co."

"Nov. 14, 1917.
"McLane Lumber & Shingle Co.,
    "Kelso, Washington.
"Gentlemen: We have not yet received your acknowledgment of our wire order of November 6th., in response to your wire of November 5, although in sending you the order we asked that you advise us by return wire how soon you could ship; also asked for prices on Standards, straight cars or mixed with Stars.
"We have since made disposition of our order for Standards, although if you have some in stock that

you wish to load out, can probably take care of them for you. What we are most anxious for, however, is the five cars of Stars. If not already shipped, please advise by return mail when we may expect them. Thanking you, we are,

"Respectfully yours,
"Chinook Lumber & Shingle Company,
"Per W. E. Howard."

"Nov. 15, 1917.

"Chinook Lumber Company,

"Gentlemen:—Inasmuch as your wire order of Nov. 6th. required confirmation by wire, which we did not do, we have considered the matter closed and did not enter your order.           Yours faithfully,

"McLane Lumber & Shingle Company,
"Per Myers."

These telegrams and letters were made a part of the complaint.

The respondent interposed a general demurrer to the complaint, which was sustained by the trial court, and upon appellant refusing to plead further, judgment was entered dismissing the action. This appeal is from that judgment.

It is an elementary rule that a binding contract of sale must be reasonably certain in its terms; that it must be such that the court can ascertain therefrom the intention of the parties; that the thing sold must be described with reasonable certainty and the price be fixed; that there must be an offer and unconditional acceptance, and that the minds of the parties must have met in the agreement.

It is contended by the appellant that the words "quote two fifteen additional business," contained in the telegram of respondent, was an offer on the part of respondent to sell to appellant Star shingles at the price of $2.15 per thousand. It is the contention of respondent that the words above quoted amount to nothing more than a quotation of prices.

The briefs cite many cases concerning the meaning the word "quote" when used in letters and telegrams such · as we are considering. Cases may be found holding that the word means "offer to sell," while other cases hold the word to be used in its common meaning, that is, to state the price of a thing. In order to arrive at the true meaning of the word, it is always necessary to take into consideration the circumstances surrounding its use. General rules of construction cannot be more than general guides. Each case must, after all, stand upon its own feet.

It seems to us that the respondent's telegram of November 5, under any meaning of the word "quote," is entirely too uncertain upon which to base a binding contract. The appellant had wired respondent advising the latter that it wished to buy from one to five cars of Star shingles at $2 per thousand. The respondent answered by saying that it had sold out all of its Star shingles, but "quote two fifteen additional business." This expression "quote two fifteen additional business" may easily mean many different and inconsistent things. It might, for illustration, mean what the appellant contends for, that is, that "we will sell you Star shingles hereafter to be manufactured by us at $2.15 per thousand," or "we have no Star shingles but will sell you any other class of shingles at $2.15 per thousand," or "we have no Star shingles but expect to manufacture some soon and we invite your further negotiations at our price of $2.15 per thousand," or "our price for future deliveries of Star shingles will be $2.15 per thousand." We do not see how it is possible for the court to say what respondent had in mind. This court, in a number of cases, has held that a contract must be certain in its terms.

In the case of *Ryan v. Hanna,* 89 Wash. 379, 154 Pac. 436, the court said:

"Many other like deficiencies suggest themselves, rendering this contract too uncertain to be enforced. The court can supply some elements in a contract, but we cannot make one; and when the language in a contract is too uncertain to gather from it what the parties intended, the courts cannot enforce it."

In the case of *Weldon v. Degan,* 86 Wash. 442, 150 Pac. 1184, the court said:

"It seems to us that the agreement is not sufficiently definite in its terms to be binding upon any one of the parties to the extent that they could be called upon to pay damages to the other parties, either actual or litigated."

In 6 R. C. L., page 644, it is said:

"The contract must be certain and unequivocal in its essential terms either within itself or by reference to some other agreement or matter. In addition to a definite promise, the subject-matter of the agreement must be expressed in such terms that it can be ascertained with reasonable certainty. A contract which is so uncertain in respect to its subject-matter that it neither identifies the thing by describing it, nor furnishes any data by which certainty of identification can be obtained, is unenforcible."

These telegrams are not sufficiently certain upon which to base a contract.

If, however, it should be considered that this expression "quote two fifteen additional business" is subject to construction, we are of the opinion that the more reasonable meaning to be given it would be that the respondent used the word "quote" in its common meaning and not as meaning that it agreed to sell; that it meant to state that it had no Star shingles for sale but that it would have some for a future delivery, and invites the appellant to further conference with

reference thereto. When appellant made an offer for Star shingles and respondent replied that it had no such shingles, the negotiations based upon appellant's proposition were at an end. By giving prices on "additional business" respondent probably meant to open new negotiations involving some other deal. He did not state what the "additional business" was to be, nor the amount thereof, or when to be performed. These things were evidently left to be later agreed upon.

The case of *Nebraska Seed Co. v. Harsh,* 98 Neb. 89, 152 N. W. 310, L. R. A. 1915F 824, is one very similar to the case at bar. There the appellant wrote respondent as follows: "I have about 1800 bu. or thereabouts of millet seed, of which I am mailing you a sample. This millet is recleaned and was grown on sod and is good seed. I want $2.25 per cwt. for this seed f. o. b. Lowell." The respondent answered as follows: "Sample and letter received. Accept your offer. Millet like sample two twenty-five per hundred. Wire how soon can load." In a suit based upon these two communications the appellant claimed damages of the respondent for failure to perform the contract. The court said:

"In our opinion the letter of defendant cannot be fairly construed into an offer to sell to the plaintiff . . . The letter as a whole shows that it was not intended as a final proposition, but as a request for bids. It did not fix a time for delivery, and this seems to have been regarded as one of the essentials by the plaintiff, for in his telegram he requests defendant to 'wire how soon can load.' "

The following cases are very similar to the one at bar and, it seems to us, are controlling in principle: *Beaupre v. Pacific & Atlantic Telegraph Co.,* 21 Minn. 155; *Moulton v. Kershaw,* 59 Wis. 316, 18 N. W. 172,

48 Am. Rep. 516; *Allen v. Kirwan,* 159 Pa. St. 612, 28 Atl. 495; *Lincoln v. Erie Preserving Co.,* 132 Mass. 129; *Topliff v. McKendree,* 88 Mich. 148, 50 N. W. 109.

· If, however, these telegrams should be construed as contended for by appellant, that respondent agreed to sell shingles to it and it agreed to purchase at a fixed price, yet there is no completed contract between the parties because there is no agreement of the amount of shingles to be sold. As so construed these telegrams would mean about as follows: Appellant wires that it wants to buy from one to five cars of Star shingles at $2 per thousand. The respondent answers to the effect that it has sold all of its Star shingles, but is willing to sell to appellant Star shingles hereafter to be manufactured at $2.15 per thousand; to which appellant wired, asking respondent to book it for five cars Star shingles at $2.15 per thousand. Certainly appellant is not entitled to a more favorable construction of these telegrams than is here given. Under this construction the appellant has unquestionably agreed to buy five cars of shingles, but there is a complete absence of agreement on the part of respondent to sell five or any number of cars. Nor is there anything in the telegrams whereby the implication can be found that respondent was willing to sell any specified number of cars. It is elementary that there cannot be a binding contract till the minds of the parties have met on the amount of the product sold. This is as important as to fix the price to be paid.

But it is clear to us that neither of these parties considered at the time that there was a binding, completed contract. The failure to agree as to the number of cars to be sold and as to the time and place of delivery, together with the subsequent correspondence, show that the parties expected there would be further negotiations between them. In construing contracts

the court will always take into consideration the construction thereof given by the parties themselves. In its telegram of November 6, asking respondent to book it for five cars Star shingles, appellant further said ''advise return wire how soon can ship. Prefer quick. . . . Medium cars or average. . . .'' On the 14th of November, appellant wrote respondent saying: ''We have not yet received your acknowledgment of our wire order of November 6 . . . . If not already shipped, please advise us by return mail when we may expect them.'' On November 15, respondent answered appellant's letter by saying: ''Inasmuch as your wire order of November 6 required confirmation by wire, which we did not do, we have considered the matter closed and did not enter your order.'' This correspondence is wholly inconsistent with the idea of a closed contract.

Judgment affirmed.

HOLCOMB, C. J., FULLERTON, PARKER, and MOUNT, JJ., concur.