[No. 15221. Department One. October 10, 1919.]

AUGUST SCHULZE, *as Pacific Coast Pole Company, Respondent*, v. GENERAL ELECTRIC COMPANY, *Appellant.*[1]

SALES (12)—CONTRACTS BY CORRESPONDENCE. There was no meeting of the minds and no completed contract by correspondence for the purchase of poles where, although prices quoted were apparently accepted, in view of changes and new conditions which appeared in each interchange, the buyer, before mailing acceptance, requested telegraphic reply, and the seller then countered by materially changing date of delivery, terms of payment and price, and the changes were never agreed to.

TRIAL (53)—QUESTIONS OF LAW OR FACT—CONSTRUCTION OF WRITINGS. Where a transaction consists wholly of letters and telegrams, whether the correspondence constituted a contract is a question for the court.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered September 13, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

[1]Reported in 184 Pac. 342.

*Post, Russell & Higgins* and *John M. Gearin,* for appellant.

*Ripley & Quackenbush,* for respondent.

TOLMAN, J.—Respondent, as plaintiff below, brought this action to recover from appellant damages alleged to have been sustained through the refusal of appellant to accept and pay for certain timber products which it is claimed it had contracted to purchase. The case was tried to a jury, and from a verdict and judgment for the full amount demanded, the case is brought here on appeal.

The first and most forcibly presented question is whether the correspondence between the parties shows a meeting of the minds and a consummated agreement or contract. The correspondence began with a letter from appellant asking respondent to quote his best prices for furnishing certain cedar poles and cross-arms to be delivered at Cruz Grande, Chile, shipment to be January 1, 1916. Another letter shortly followed increasing the number of poles to be furnished. Respondent answered to the effect that, as soon as he could get shipping rates, he would make quotations, and thereafter wrote quoting prices, and said: "These prices include cost insurance, freight, duty, and unloading;" stated that delivery would be made during January, February and March, and asked for terms of payment. Appellant replied by night lettergram as follows:

"Dec. 6, 1915.

"We accept your quotation November thirteenth poles and cross-arms, Cruz Grande, Chile, on condition poles meet American Telephone & Telegraph specifications and our inspection before shipment, you to arrange shipment so at least one-third shipped each month, January, February, March. Our representative will arrange unloading destination in four days your

expense. Terms of payment seventy-five per cent against shipping documents, twenty-five per cent on delivery Cruz Grande. Wire if satisfactory; will then mail formal acceptance.''

To which respondent sent the following answer:

"Dec. 8, 1915.
''Wire Grace and Co., San Francisco, regarding your shipping request. In answer they raise freight ten cents a foot to discharge five hundred poles a day; demurrage one thousand dollars a day, February, March, April shipment ships option; thinks they can take all on February; what shall we do?''

In due course, appellant sent its answer thereto, which reads:

"Dec. 10, 1915.
''Your night letter eighth. Accept proposition poles for Chile at increased freight rate ten cents per foot. Will unload five hundred poles per day and accept demurrage required. Will mail acceptance on receipt of telegraphic reply.''

Although this message appears to accept the terms and conditions theretofore made by respondent, yet, in view of the changes and new conditions which had appeared in each interchange of communications, it not unreasonably called specifically for a telegraphic reply before acceptance. Had there been such a· telegraphic reply of acceptance on the part of respondent, clearly we could say that the minds of the parties had met and a contract had been made; or had there been no reply whatever, it might possibly be argued that we should draw the inference from mere acquiescence that the parties had reached a mutual agreement and understanding. Yet the specific request for a reply before acceptance, under many authorities, would be sufficient to show that something was left unfinished and still to be done before the contract could be regarded as completed. *McDonnell v. Coeur d'Alene Lumber Co.,*

56 Wash. 495, 106 Pac. 135; *Stanton v. Dennis,* 64 Wash. 85, 116 Pac. 650. But the facts do not call for the application of that rule here, as respondent, evidently then believing that the contract was not then made, instead of wiring an acceptance as he had been invited to do, proceeded to send a telegraphic reply as follows:

"Dec. 11, 1915.
"Booked Cruze Grande material with Grace and Company San Francisco earliest possible delivery; will secure for cost and freight plus ten per cent; your favor increased cost respectively, poles three sixty and four ten, cross-arms twenty twenty-five and thirty-five; terms twenty per cent, and you prepay freight; will write when to send inspector."

This telegram changed the date of delivery from January, February, and March, as set forth in the earlier communications, and from February, March and April, as named in the telegram of December 8, to "earliest possible delivery," which might mean, and under the conditions disclosed by the record probably did mean, something quite different, and which would enable respondent to cast all responsibility for delay upon the transportation companies. It clearly indicated an increased price for both poles and cross-arms; it called for quite different terms of payment; and as the record shows that the seventy-five per cent mentioned in the lettergram of December 6 to be paid against shipping documents would not be more than sufficient to pay the freight, it appears conclusively that respondent was still trying to secure better terms. Though it is not claimed that a contract was made subsequent to the exchange of messages quoted, it is argued that, as appellant in later communications used such expressions as "Consider our orders for the above cancelled," and as it sent its inspector to Everett to confer with respondent and examine the poles he was

offering, and something was there said about arbitration when the parties failed to agree as to the size of the poles specified, it thereby admitted an existing contract. We cannot so hold. The quoted expression as to cancellation was expressly based upon unsatisfactory prices and delivery for poles to be furnished by respondent, and meant no more than a refusal to proceed further. The sending of the inspector does not necessarily mean more than a hope or expectation that a contract might be arrived at; and indeed, as the inspector brought with him a contract in written form which he requested respondent to sign, and which, after some delay and temporizing, respondent changed and signed, and which appellant refused to accept as so changed, it seems apparent that the inspector was sent only in the hope that a contract might be arrived at. Upon the whole record, we are satisfied that the minds of the parties never met. At the one time when respondent might have signified his acceptance of the terms and conditions then outlined, and thus secured a binding contract, he, instead of so doing, countered by demanding better prices, terms and conditions, which were never accepted by appellant.

In *Kuh v. Lemcke,* 107 Wash. 45, 180 Pac. 889, we quoted with approval the rule laid down in *Baker v. Johnson County,* 37 Iowa 186, which is:

"An offer by one party assented to by the other will generally constitute a contract, but the assent must comprehend the whole of the proposition. It must be exactly equal to its extent and terms, and must not qualify them by any new matter. A proposal to accept, or an acceptance of, an offer on terms varying from those proposed, amounts to a rejection of the offer."

So here, by his night letter of December 11, respondent rejected the offer contained in appellant's telegram of December 10. These views harmonize in principle

with our many decisions involving contracts made, or attempted to be made, by correspondence. *Chinook Lumber & Shingle Co. v. McLane Lumber & Shingle Co.*, 107 Wash. 587, 182 Pac. 625; *Sillman v. Spokane Savings & Loan Society*, 103 Wash. 619, 175 Pac. 296; *Richardton Roller Mills v. Miller*, 99 Wash. 654, 170 Pac. 357.

The negotiations between the parties consisting wholly of letters and telegrams, it was for the court to determine, as a matter of law, whether such correspondence constituted a contract, and it therefore follows that the trial court erred in denying appellant's challenge to the sufficiency of the evidence and motion for judgment. Since these views dispose of the case, it is not necessary to consider the other points raised.

The judgment appealed from is reversed, with instructions to grant appellant's motion for judgment in its favor.

HOLCOMB, C. J., MITCHELL, MACKINTOSH, and MAIN, JJ., concur.