[No. 15780.  Department Two.  August 4, 1920.]

EMPSON PACKING COMPANY, *Appellant*, v. LAMB-DAVIS
LUMBER COMPANY *et al.*, *Respondents*.[1]

SALES (1)—CONTRACT—EXECUTION—SIGNATURE OF PARTIES.  A
contract for the sale of box shooks was incomplete and not enforce-
able between the parties, where the original draft of the contract
was reduced to writing and signed by one of the parties and for-
warded to the other, which other, before signing, made changes
therein and returned it, and the first party, though accepting the
changes, made other changes and insisted upon a contract without
interlineations and erasures, and after still other changes, it was
agreed that a contract containing the terms upon which the parties
had agreed should be signed by the presidents of the respective com-
panies, which was never done.

PLEADING (173)—ISSUES, PROOF AND VARIANCE—EVIDENCE ADMIS-
SIBLE UNDER GENERAL DENIAL.  In an action for breach of contract
to deliver box shooks, a letter tending to show that the original draft
of the contract had been accepted by neither of the parties is admis-
sible under a general denial.

Appeal from a judgment of the superior court for
Chelan county, Grimshaw, J., entered October 4, 1919,
upon findings in favor of the defendants, dismissing
an action on contract, tried to the court.  Affirmed.

*Pershing, Nye, Fry & Tallmadge*, and *Robert G.
Bosworth*, for appellant.

*Fred B. Morrill*, for respondents.


MOUNT, J.—The purpose of this action was to re-
cover $14,138.63 for an alleged breach of a written con-
tract between the plaintiff and the defendants.  The
complaint alleged in substance that, on the 3d day of
November, 1916, the plaintiff and defendant entered
into a written contract by the terms of which the de-
fendant Lamb-Davis Lumber Company bound itself to

[1]Reported in 191 Pac. 833.

furnish to the plaintiff all its requirements of box shooks, not exceeding a total of one million boxes, the various types of boxes and the width of lumber to be used being specified in the contract; that thereafter, in accordance with the terms of the contract, the plaintiff sent specifications and orders for more than two hundred thousand boxes as required by the contract; that the defendant refused to ship the said box shooks and the plaintiff was required to purchase the same in the open market at a loss of more than $14,138.63 over the agreed price, according to the terms of the contract. The defense was a general denial. Upon these issues the case was tried to the court without a jury, and resulted in a judgment of dismissal, and plaintiff has appealed.

The facts are as follows: In the year 1913, the Lamb-Davis Lumber Company, through its agent, Mr. J. P. Packham, entered into a three-year contract with the appellant for the sale of box shooks. In October, 1916, when the prior contract was about to expire, the Packham Sales Company wired the Lamb-Davis Lumber Company asking quotations on box shooks to meet the appellant's future requirements. As a result of this telegram a written contract was prepared and dated November 3, 1916. This contract was signed by the appellant and handed to the respondent's agent, Mr. Packham, who sent the contract to the respondent for signature. Upon receipt of this contract, the respondent made certain changes therein and returned the contract, signed as changed, with a letter dated November 17, 1916, stating these changes and erasures as follows:

" 'When boxes are shipped without any printing on the ends or sides, the party of the second part is to be allowed twelve and a half cents per hundred boxes for

all such blank shooks shipped,' and also added to the
sentence relative to the prices, that shooks 'are to be
F. O. B. Longmont, Colorado, or common points, based
on the present rate of freight,' and also changed the
paragraph regarding the material from which the
shooks were to be manufactured by changing the words
'Oregon or Washington white pine' to read 'Western
pine' and in the paragraph regarding the loading of
cars inserted the words 'or rope' in the sentence pro-
viding that all shooks should be thoroughly bound with
strong wire.' "

The words "party of the second part," above quoted,
refer to the appellant. On receipt of this letter, the
appellant answered as follows:

"Your letter of the 17th has been forwarded to me
at this place from our Longmont office, also contract
for box shooks which I signed before I left Longmont.
I think it would look better to have a new contract
entirely instead of so many changes in the old one.
I am therefore sending you them in duplicate. I see
no objections to making the various changes you speak
of, although I want them a little clearer so long as
you suggest that they be made at all. . . . In re-
gard to adding that your price delivered to our factory
is based on present rate of freight, will say that it is
satisfactory to us, but to make that a little clearer we
have stated we will pay the excess freight if any over
the present rate, and if the rates decline we were to
have the advantage of the decline. . . . In regard
to the material as we specified it in the contract, our
stenographer copied contract we last made with you.
If you prefer to use the words 'Western pine,' how-
ever, we have no objection to your doing so; but to
make it clearer we have added, 'the material furnished
under this contract is to be of the same kind and of
the same quality as furnished to us during the years
1914, 1915 and 1916.' . . . In regard to tying the
boxes, we formerly had them tied with rope and a great
many bundles would get broken and boxes would be

damaged in transit; for that reason we changed our contract to read wire instead of rope, but as you are responsible for the delivery of goods to us in good order you can tie them any way you see fit. Any expense that would accrue to us in handling by reaching us in bad condition will, of course, be charged to you. I believe this covers all of the points that you speak of.''

To this letter the Lamb-Davis Lumber Company replied by letter of December 18, 1916, as follows:

''We are enclosing herewith revised copy of our canning case contract, duly signed by Mr. George L. Gardner, as attorney in fact for the Lamb-Davis Company. The delay in returning this contract has been caused by Mr. Gardner having just returned from the east, and before signing the contract had it examined by our attorneys, who recommended the changes which we have made.

''We have taken the liberty to make changes as suggested by the attorney and have changed the wording to make more clear the intent of the different paragraphs changed. For instance, the paragraph relative to dating, in the old contract, specified that shipments might begin at any time desired after February 1st of each year, provided the first car shipped was billed May 15th and all cars shipped after that date to be billed as much later than May 15th as the various shipments are later than the first shipment. We have changed that paragraph to read that the party of the first part may begin shipments at any time between February 1st and May 15 of each year, provided that all cars shipped prior to May 15th bear May 15th dating, and all subsequent shipments bear regular dating. This is the intent of the paragraph mentioned and is the manner in which it has always been interpreted by both parties of the contract. . . . Would like to have you acknowledge receipt of the contract and your acceptance of the changes, which we will attach to our copy of the contract in order to show that the changes have met with your approval.''

To this letter appellant replied by letter dated December 28, 1916, which letter contained the following:

"Your letter of the 18th, enclosing contract, received, and it would have had an earlier reply had it not come along the holiday season.

"We see no objection to the minor changes you have made in the contract. There is one clause where you say that deliveries shall be within a reasonable length of time after receipt of the order. What might seem reasonable to you might be very unreasonable to us, and we think you should specify a certain amount to be delivered each week after receipt of order, although we will not insist upon that, as we have had no difficulty until last fall, and you tell us that you are in shape to ship more promptly in the future. Our attorney tells us, though, that the contract should be signed by president of your company and the official seal should be attached. We therefore return them to you for this correction. Kindly get them to us with this change made as soon as possible. We will return and attach our seal as soon as possible. We seem to have considerable difficulty to get these contracts in good shape this year, but as they are running for some time we feel that we ought to be careful to have them right."

In answer to this letter, the respondent replied by letter dated January 3, 1917, in part as follows:

"We acknowledge receipt of your favor of the 28th returning contracts, and wish to advise that it will be some time before we can return these contracts to you, as the president of this company is in the east, and the contracts will have to be sent to him for his signature."

These contracts appear never to have been signed. The appellant, relying upon the first draft of the contract, which was signed, sought to order box shooks as therein required, and the respondent declined to furnish box shooks under the contract. Appellant then purchased the box shooks in the open market. This action resulted.

Upon the trial of the case, the trial court was of the opinion that the first draft of the contract was a completed contract and that the subsequent modifications amounted to an abrogation of the original contract. We are of the opinion that the trial court was in error in holding that the first draft of the contract, which was signed by both parties, was a completed contract. We think it is clear from the evidence that a completed contract was never executed by the parties thereto. It is plain from the last letter above quoted, which was written by the appellant to the respondent, that it was the intention of the parties to have a formal written contract, signed by the presidents of both companies, with the seal attached. No such contract was ever signed. We think the evidence is plain to the effect that the parties were endeavoring to reach a satisfactory agreement. The original draft of the contract was reduced to writing. It was signed by one of the parties and forwarded to the other. The other, before signing, made certain changes therein, signed it and forwarded the contract with these changes to the other party. The other party, while accepting the changes, made other changes and insisted upon a contract without interlineations and erasures. It was then sent to the other party and additional changes were made therein, and it was finally concluded that, after the parties had agreed upon all of the terms of the contract, it should be signed in a certain way by the president of the respective companies. It was never so signed. We are of the opinion, therefore, that there was no completed, enforcible contract entered into between the parties.

In the case of *Schulze v. General Electric Co.,* 108 Wash. 401, 184 Pac. 342, quoting from an earlier case, we said:

"An offer by one party assented to by the other will generally constitute a contract, but the assent must comprehend the whole of the proposition. It must be exactly equal to its extent and terms, and must not qualify them by any new matter. A proposal to accept, or an acceptance of, an offer on terms varying from those proposed, amounts to a rejection of the offer. *Baker v. Johnson County*, 37 Iowa 186."

Under this rule, when the original contract signed by the appellant was sent to the respondent and changes made therein, that amounted to a rejection of that proposed contract. And so all the way through, the different changes by the different parties amounted to rejections of those provisions previously proposed. When all the terms were finally agreed to, the appellant insisted that the completed contract should be signed by the president of the respondent company, with the seal attached.

In the case of *Sparks v. Mauk*, 170 Cal. 122, 148 Pac. 926, it was said:

"It is next asserted that the contract contemplated a signing by both parties; that the plaintiff did not sign; that the contract is not complete and therefore unenforceable. It is the undoubted rule that where the contract contemplates the execution of it by signing, either party has the right to insist upon the condition, and mere acts of performance on the part of one who has not signed will not validate the contract."

In *Aftergut Co. v. Mulvihill*, 25 Cal. App. 784, 145 Pac. 728, it is said:

"And as it was the expressed intention of the parties that it should be reduced to writing and signed by them, certain it is that, this stipulation not having been performed, the contract cannot be regarded as binding on either of the parties."

In *Barber v. Burrows*, 51 Cal. 404, the rule is to the same effect. See, also, *Morrill v. Temaha Consol. Mill*

*& Mining Co.,* 10 Nev. 125; *McDonnell v. Coeur d'Alene Lumber Co.,* 56 Wash. 495, 106 Pac. 135.

Since the contract was never completed, it was not enforcible by one against the other. The trial court seemed to be of the opinion that *Hunter v. Byron,* 92 Wash. 469, 159 Pac. 703, controlled, and that the mere signing of the original contract by the parties constituted an effective agreement. That, no doubt, would have been true if there had been no modification of the terms of the original contract. In the case of *Hunter v. Byron,* the contract was acted upon, and for that reason made a binding contract. "Where the parties act under a preliminary agreement, . . . . they will be held to be bound notwithstanding the fact that a formal contract has never been executed." 6 R. C. L., p. 619.

The appellant argues that the trial court erred in receiving in evidence the letters above referred to, because the answer of the respondent was a general denial and there was no affirmative defense to the effect that the original contract had been abrogated. The effect of these letters was to show that the original draft of the contract had never been accepted by either of the parties, and therefore, we think, were admissible in evidence under a general denial. In this view of the case it is unnecessary to notice the other assignments of error.

The judgment appealed from must be affirmed because there was no completed contract.

FULLERTON, TOLMAN, and BRIDGES, JJ., concur.

HOLCOMB, C. J. (concurring)—I concur in the result, agreeing with the trial court that the first draft of the contract was a completed contract, as to form and substance. The subsequent correspondence resulted in

finally materially modifying the original contract, but which modifications were not executed in manner and form as contemplated and required by the parties, leaving them without a complete contract in writing.