[No. 16470.    Department One.    July 8, 1921.]

PENNINGTON & COMPANY, *Respondent*, v. HEDLUND BOX & SHINGLE COMPANY, *Appellant*.[1]

SALES (25)—CONSTRUCTION OF CONTRACT—PROVISIONS IN GENERAL. A printed letter head containing a provision stating "No offers binding on us until returned and accepted in writing" would have no effect in governing clear and specific language evidencing specified terms accepted and agreed to by both of the parties, or acted upon.

SALES (8)—REQUISITES—CONTRACTS BY CORRESPONDENCE. A consummated contract is not shown by correspondence arriving at the terms of an agreement for the sale of a commodity, but which was not entered into by reason of the failure of the buyer to execute and deliver a formal written order as required by the seller.

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered April 28, 1920, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

*Hamblen & Gilbert* and *Richards & Fontaine,* for appellant.

*Preble, McAuley & Meigs,* for respondent.

HOLCOMB, J.—The lower court gave judgment for respondent for damages for the breach of an alleged contract for the sale and delivery to it of 100,000 apple box shooks. The measure of recovery as fixed by the court was the sum of the difference between the cash market value f. o. b. Yakima, Washington, of ten thousand of such box shooks, on each of the ten different dates upon which such boxes should have been shipped, and the stipulated price of such ten thousand boxes on each of the ten dates so determined. In March, 1919, the Yakima Valley Traffic & Credit Association, a

[1]Reported in 199 Pac. 235.

corporation, in which the principal fruit buyers of the Yakima region were interested, and which had for one of its members the respondent, Pennington & Company, addressed a letter to the appellant at Spokane, Washington, who was engaged in the manufacture of box shooks, stating that the membership of the association had decided to form a pool for the purchase of box shooks, and asking appellant to quote prices upon from one to three million boxes of the specifications enclosed. All of the correspondence which followed, covering a period of a month, was carried on by the Yakima Valley Traffic & Credit Association, with appellant.

On March 29, 1919, appellant wrote the following letter to the association:

"Yakima Traffic & Credit Association,
    c/o Mr. I. L. Plette,
      "Yakima, Washington.

"Gentlemen: All agreements and contracts are contingent upon strikes, accidents, fires, delays to carriers and other delays unavoidable or beyond our control. Quotations are based upon terms herein stated; are made subject to change without notice and to prior sale of stock. Delivered prices are based on freight rates in effect at time prices are made. Advances in freight rates will increase prices proportionately. No offer is binding upon us until returned and accepted in writing. We do not guarantee safe delivery, nor against loss in transit. Claims will not be allowed unless made within five days of receipt of goods and entire shipment is held intact.

"We enclose confirmation of our telegram to you on this date.

"Now we can take care of your orders to the extent of 15 car loads of apple boxes at the present time and we suggest that Mr. Pennington take say 10 cars and the Washington Fruit & Produce Company take 5 cars. Then later on, we have no doubt, but what we can

furnish Mr. Pennington with the balance of his re-
quirements.

"The boxes will, of course, all be made of Western
White Pine, well manufactured with ends ¾" thick and
sides 5/16". The ends will contain possibly 20% of
two pieces each fastened with corrugated staples put in
by machinery to a smooth fit. Sides will be of one piece.
T. & B. of four pieces, that is, two tops and two bot-
toms. Four cleats. All K. D.

"The price is $14.00 per 100 net f. o. b. at 15c frt.
rate from Spokane, Wash.

"The deliveries are to start in April and continue at
the rate of one car per week. We have some other
orders to deliver also, so do not anticipate that any one
of your members buying from us will receive a big
bunch of boxes from us all at once. This is merely
representative of our schedule and it will naturally
vary somewhat.

"ThersM: The price is net. Buyer to pay frt. bill
as goods are received for which we will give him credit,
except for the Federal Taxes on the freight expenses
themselves. We also wish to use Trade Acceptances on
each car covering sixty days time from date of ship-
ment. We may decide to let each car be invoiced on
open account, but either way should not matter.

"Thanking you very kindly for calling us, we remain,
        "Yours very truly,
            "HEDLUND BOX & SHINGLE COMPANY,
                        "By D. A. Hedlund."

The first paragraph above set forth was a printed
paragraph just below the address and on all the letters
from appellant. To this letter the association made
reply under date of March 31, as follows:

"Hedlund Box & Shingle Co.,
    "Spokane, Washington.
    "Gentlemen: Referring to your letter of March 29th.
Please confirm orders for 100,000 apple box shooks,
specifications as shown for Pennington & Company,
and 50,000 for Washington Fruit & Produce Company
at terms mentioned.

"If in the market for any further orders at the price of 14c please advise and I will endeavor to place for you.

"Yours very truly,
"Y. V. TRAFFIC & CREDIT ASS'N,
"I. L. Plette, Manager."

On April 2, appellant wrote the association, as follows:

"Yakima Traffic & Credit Association,
    "Yakima, Wash.

"Gentlemen: We have your letter of the 31st ultimo for which we thank you.

"Today we are sending contracts to Pennington & Co., and the Washington F. & P. Co., and as soon as these are returned to us signed by them we will be ready to go ahead on deliveries.

"Just at present we do not want to accept any more orders as we always wish to deliver what we agree to and there are many elements, labor, etc., which may prevent us from doing more than are already agreeing to do.

"Later on we shall be pleased to take the matter up with you again and trust you will have the orders and that we will be able to make deliveries.

"Yours very truly,
"HEDLUND BOX & SHINGLE COMPANY,
"By D. A. Hedlund."

The contract referred to in this letter was never sent to Pennington & Company, no form of contract was ever executed, no orders for shooks were ever sent by Pennington & Company to appellant, and on April 15, appellant again wrote the association saying: "as yet we have not received the order from Pennington & Company for any apple boxes. Therefore we have decided to withdraw our offer which we have no doubt will be satisfactory to you."

The questions of law discussed by appellant upon this appeal are these: (1) Did the negotiations be-

tween the parties as exhibited by the correspondence in question constitute a contract? and (2) did the court apply the proper rule of damages and fix the proper amount of damages in its judgment?

In support of its first proposition, appellant contends, first, that the minds of the parties did not meet as to the quantity of box shooks to be furnished; and second, no written contract or order was ever signed by the respondent Pennington & Company.

Attention is first called to the letter of appellant dated March 29, in which appellant made a proposition to take care of the association's orders to the extent of fifteen carloads of apple boxes at the present time, and suggested that Mr. Pennington take ten cars, and the Washington Fruit & Produce Company take five cars. Then it was suggested that later on appellant could furnish Mr. Pennington the balance of his requirements. Instead of accepting the proposal for fifteen carloads of apple boxes, the association mentioned 100,-000 apple box shooks for Pennington & Company in its reply. This, it is insisted, is a marked variation from the terms of the offer. The evidence shows that a carload of apple box shooks contains from eight to ten thousand shooks. We consider this variation immaterial since the letter of April 2, sent by appellant to the association stating, that contracts were being sent to Pennington & Company, and the Washington Fruit & Produce Company, and as soon as the contracts were returned to the appellant, signed, the appellant would be ready to go ahead on deliveries, either accepted the order of the association for 100,000 apple box shooks, or intended that contracts be signed stating the shooks by carload lots instead of box shook quantities, as ordered by the association.

A more serious question is the question of whether or not a contract was consummated at all.

Appellant attaches importance to the fact that each letter head of appellant contained in the heading this stipulation; ''No offers binding on us until returned and accepted in writing.'' We attach no importance to that stipulation in the printed portion of the letter head, because, clear and specific language agreeing to specified terms accepted and agreed to by both of the parties, or acted upon, of course constitutes a contract, and the printed letter head would have little or no influence in changing the clear and specific language of the agreement as otherwise evidenced. *Sturm v. Boker,* 150 U. S. 312; *Summers v. Hibbard, Spencer, Bartlett & Co.,* 153 Ill. 102, 38 N. E. 899; *Sturtevant Co. v. Dugan,* 106 Md. 587, 14 A. & E. Ann. Cas. 675.

However, there was more evidence in this case explicitly pointing to the intention of the appellant not to consider the agreement consummated until a written formal contract had been prepared and signed. In another letter from appellant to the association, dated March 14, appellant stated that ''the writer expects to be in Yakima next week, when he will call on you in hopes that you will then be ready to sign up a contract for your requirements.'' The writer of this letter was D. A. Hedlund. In the letter of April 2, replying to the letter of the association of March 31, it was stated that the contracts for Pennington & Company and for the Washington Fruit & Produce Company would be sent, and plainly intimated that appellant would *not* be ready to go ahead on deliveries until the contracts were returned to appellant signed by the parties to whom the deliveries were to be made.

Undoubtedly appellant had in mind that the principal rather than the agent with whom it had theretofore been dealing in the negotiations, should be bound by

formal contract, and this it had a right to insist upon, and until the contract should be reduced to writing as the evidence of the terms of the agreement, there is nothing binding upon either of the parties, unless it had been acted upon by one or the other. In this case neither of the parties had acted upon the contract except that respondent insists that it had resold the box shooks which it had ordered. But it did not order any. It had merely arrived at the terms of an agreement to be entered into, which was not entered into. This feature of the case, we consider, is controlled by our decision in *Empson Packing Co. v. Lamb-Davis Lumber Co.*, 112 Wash. 75, 191 Pac. 833, and by *Schulze v. General Elec. Co.*, 108 Wash. 401, 184 Pac. 342; *Sparks v. Mauk*, 170 Cal. 122, 148 Pac. 926; *Aftergut Co. v. Mulvihill*, 25 Cal. App. 784, 145 Pac. 728; *Barber v. Burrows*, 51 Cal. 404; *Morrill v. Tehama Consolidated Mill & Mining Co.*, 10 Nev. 125; *McDonnell v. Coeur d'Alene Lumber Co.*, 56 Wash. 495, 106 Pac. 135; *Donnelly v. Currie Hdw. Co.*, 66 N. J. 388, 49 Atl. 428; *Ocala Cooperage Co. v. Florida Cooperage Co.*, 59 Fla. 394, 52 South. 13.

The respondent therefore had no right of recovery. The judgment below is erroneous, and is reversed.

PARKER, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.