[No. 33124.  *En Banc.*  November 3, 1955.]

DONALD H. HEDGES *et al., Respondents,* v. MILDRED HURD, *Appellant.*[1]

*Wayne A. Wyman,* for appellant.

*C. M. McCune* and *John A. Godfrey,* for respondents.

FINLEY, J.—This is an action for damages for an alleged breach of an earnest-money receipt or contract, relating to the sale of certain real and personal property.

There seems to be no significant dispute as to the facts. Mildred Hurd listed a rental duplex with several realtors, including the Square Deal Realty. Mr. and Mrs. Hedges became interested in the property. The realty firm, using a printed form, prepared a document entitled *Earnest Money Receipt and Agreement.* Mr. Hedges signed as purchaser. Mildred Hurd signed as seller. The document also was signed by a representative of Square Deal Realty, osten-

[1]Reported in 289 P. (2d) 706.

sibly as agent for the seller. The Hedges deposited two hundred dollars with the realty firm and, subsequently, put four hundred fifty dollars (balance of the down payment) in escrow.

The seller received a better offer for the property from a third party, and requested the Square Deal Realty to obtain a release from the Hedges. The latter refused to give a release. On advice of counsel, the seller offered to convey the property to the Hedges upon prompt payment by them of the entire purchase price. The Hedges apparently were not financially able to accept this offer. The seller gave a note to Square Deal Realty in payment of a real-estate commission on the transaction with the Hedges. Thereupon, the seller signed an earnest-money receipt and an agreement to convey the property to a third party.

The purchasers instituted this suit for damages for a breach of contract. The trial court held the parties had entered into a valid and binding contract. Judgment was entered awarding one thousand dollars in damages to Mr. and Mrs. Hedges. The seller, Mildred Hurd, appealed.

We think her assignments of error raise only two significant questions: (1) whether the earnest-money receipt and agreement, signed by the parties, constituted a valid and binding contract for the sale of real estate; (2) whether the seller breached the contract.

Appellant contends that the earnest-money receipt and agreement calls for the execution of a second contract to convey the property to the Hedges by warranty deed; that the terms of the second contract had not been agreed upon by the parties; that, consequently, the earnest-money receipt did not contain all of the terms to be agreed upon by the parties and, therefore, was not sufficiently definite to create legal obligations enforcible in the courts. Appellant further contends that any obligation on her part was discharged when she offered to convey to the Hedges, if the full purchase price was promptly paid by them. In support of the above contentions, appellant relies principally on the decision in *Hubbell v. Ward*, 40 Wn. (2d) 779, 246 P. (2d) 468.

Respondents contend that the earnest-money receipt and agreement contained all of the necessary elements for a simple but valid and binding contract respecting the sale of the real and personal property described therein; that appellant breached the provisions of the earnest-money agreement in refusing to complete the transaction with the Hedges and in contracting with a third party for the sale of the property. Respondents point out that damages rather than specific performance is the relief sought in the instant case; that this aspect of the matter distinguishes it from *Hubbell v. Ward, supra*. We are inclined to agree with the respondents.

There is a tremendous volume of real-estate transactions in our state. They vary in size and importance, financially and otherwise. They are consummated in a variety of real-estate offices, both large and small, located in practically every section of the many communities in the state. In a high percentage of the transactions, printed forms, tailored to suit the particular occasion and known generally as earnest-money receipts, are used rather than more detailed contracts covering a variety of contingencies or possibilities that may or may not subsequently be of some legal or other significance to the seller and the purchaser of real estate.

There is a practicable reason for the widespread use of the relatively simple earnest-money receipt. It lies in the real-estate practice that has grown up, or the manner in which sellers and buyers nowadays consummate a sale or conveyance of real estate. Usually a seller lists property with a real-estate broker. The property is shown to various prospects by the real-estate broker. The seller may or may not see or contact a prospect or purchaser until after a deal is consummated. Ordinarily, no one is particularly interested or has the time to work out a contract (covering a variety of contingencies of some possible future interest to the parties) in minute detail. At this stage, the parties are interested only in the execution of a simple agreement which will have some effective legal significance as to both. They anticipate that the execution of an earnest-money receipt and agreement is not without some legal significance and effect.

The earnest-money receipt and agreement in the instant case adequately describes the subject matter of the sale as certain real estate and a few items of personal property. There is no problem as to the competency of the parties, the adequacy of the consideration, misrepresentation or fraud, or whether there is a memorandum or writing sufficient to satisfy the statute of frauds. The purchase price is stated, and clearly, as seven thousand dollars. A down payment of six hundred fifty dollars is specified, with a balance of $6,-350, payable fifty-five dollars, or more, per month, at the purchaser's option, including interest at five per cent per annum on the deferred balance; title insurance to be furnished as soon as procurable by the seller, or this may be waived by the purchaser. The earnest-money agreement provided that the sale was to be closed fifteen days after the furnishing of title report or insurance by the seller, that the purchaser would get possession on the date of closing, that taxes, rents, insurance, interest, water and other utilities were to be prorated as of the closing date; furthermore, that all necessary legal documents or instruments and money or funds relative to the transaction were to be deposited in escrow with the Lawyers' Title Insurance Company, and the escrow cost was to be shared equally.

In *Hubbell v. Ward, supra,* the court stated, quite clearly, that the earnest-money receipt and agreement *constituted a valid and binding contract,* but emphasized the fact that the remedy sought there was specific performance of a provision of the contract calling for the execution of another contract for the conveyance of the real estate involved. It was pointed out that little or nothing was said as to what the terms of the second contract were to be; that there were at least thirteen matters (enumerated by the court in the *Hubbell* case) which might be included quite properly in a contract of conveyance for the protection of the interests of the buyer or the seller, or of both parties. However, in the instant case, as mentioned heretofore, specific performance is not the relief sought in court by the purchaser.

We now come to this question: What elements are essential to a simple, valid and binding contract for the sale

of land *in an action for damages for breach thereof*? As in-
dicated above, the earnest-money receipt herein involved
contained an adequate description of the property. It speci-
fied the total purchase price, the method of payment of prin-
cipal and interest; provision was made for prorating taxes,
insurance, and liens; for payment of water and other utili-
ties, for possession, and for the deposit in escrow of the
balance of the down payment by the purchasers, and a war-
ranty deed by the seller. In view of what was said as to the
earnest-money receipt in the *Hubbell* case, *supra,* we are
convinced that the aforementioned things constitute and em-
brace all of the essential elements of a simple, binding con-
tract for the sale of land, and that the earnest-money receipt
or contract in the instant case was breached by the appellant
in the instant case.

Now as to the remedy of damages rather than specific
performance. In 49 Am. Jur. 38, 39, § 25, we find the follow-
ing statement:

"It is often said that a greater degree of certainty is re-
quired in the terms of a contract which is to be specifically
enforced in equity than is necessary in one which is to be
the basis of an action at law for damages. A contract ex-
pressed in very general terms may be the basis of an action
for damages for its breach, although entirely too loose and
inexact to warrant a decree for specific performance. . . .
Where the relief sought is specific execution, it is essential
that the contract itself be specific. In other words, the cer-
tainty required must extend to all the particulars essential
to the enforcement of the contract. But where there has
been an entire breach, and compensation is asked in dam-
ages, it may be sufficient if there is certainty only as to the
general scope and stipulations of the contract."

In Restatement of Contracts 633, 635, § 358 (1) *e,* we find
the following:

"*e.* Specific performance is not available as a remedy un-
less there is a contract to be enforced. The requirements of
a contract, as defined in the Restatement of this Subject, are
the same, irrespective of the remedy that is being sought;
but the various remedies are not available under the same
circumstances. A judgment for damages will be given in
many cases in which a decree for specific performance is not

available; and the refusal of the latter remedy may be for other reasons than the non-existence of a contract."

And in the same text at p. 673, § 370, *b.*, we find:

"*b.* If the uncertainty is so great as to prevent the giving of any legal remedy, direct or indirect, there is no contract. But there may be cases in which it is just to refuse the remedy of specific performance on the ground of uncertainty, even though it is not unjust to give a judgment for damages or restitution."

■ An earnest-money agreement was not involved in the case of *Gulbenkian v. Gulbenkian,* 147 F. (2d) 173, 158 A. L. R. 990. However, the court was confronted with the question of whether a contract too indefinite for specific performance could still be the basis for an award of damages. The court referred to the sections of the Restatement, quoted hereinbefore, and said:

"But even though an agreement may be too indefinite in its terms to be specifically enforced, it may be certain enough to constitute a valid contract for breach of which damages may be recovered. A. L. I., Contracts, § 370 Comment (b); *Van Siclen v. Mather,* 134 Misc. 629, 631, 235 N. Y. S. 589, affirmed 227 App. Div. 790, 237 N. Y. S. 913."

We think the instant case is distinguishable from *Hubbell v. Ward, supra,* for the reasons indicated herein, and that the judgment of the trial court should be affirmed. It is so ordered.

MALLERY, ROSELLINI, WEAVER, and OTT, JJ., concur.

HILL, J. (concurring)—I concur in the result of the majority opinion, and I agree with the majority that damages can be awarded under certain circumstances where a contract could not be specifically enforced.

It is appellant's contention that an "Earnest Money Receipt and Agreement," signed by all the parties and (a) identifying the seller and the purchaser, (b) adequately describing the property, (c) stating the purchase price and the manner in which payment thereof is to be made, (d) providing that taxes, rent, insurance, interest, and water and other utility charges are to be prorated as of the closing

date, and (e) fixing the closing date and the date on which the purchaser is to have possession, is, as between the seller and the purchaser named therein, nugatory and illusory, inasmuch as it is contemplated that the parties are to enter into an executory real-estate contract and they may not be able to agree on the terms thereof. Quite bluntly stated, appellant's contention is that such an earnest-money receipt and agreement does no more than evidence that the real-estate broker has earned his commission, and that the seller can be compelled neither to specifically perform the agreement nor to pay damages for its breach. (If the seller is not bound by such an agreement, it is difficult to see on what theory the purchaser is bound, and all of our cases upholding the forfeiture of earnest-money payments when the purchaser has refused to complete the transaction would have to be reconsidered, and many of them overruled.)

It is my view that, as a result of such an earnest-money receipt and agreement, there is an implied agreement between the seller and the purchaser that they will negotiate in good faith the terms of the executory real-estate contract contemplated by the agreement. The terms of such executory contracts are now so generally standardized that bona fide disagreement on the terms not covered by the earnest-money receipt and agreement is quite unlikely. Appellant suggested in oral argument that she could prevent the execution of such an executory contract by insisting upon fantastic and impossible terms. In urging such terms, she would be violating her implied agreement to negotiate in good faith. In the present case, appellant refused even to attempt to negotiate the executory real-estate contract contemplated by the agreement, and thereby she breached the contract she had made by signing the earnest-money receipt and agreement. The respondents have established their damages for that breach, and the judgment in their favor should be affirmed.

HAMLEY, C. J., concurs with HILL, J.

DONWORTH, J. (dissenting)—I am unable to agree with the majority in holding that there was a sufficient meeting

of the minds of the parties to create a contract which could be the subject of an action for damages for its breach.

The earnest-money receipt and agreement which the parties signed included, in addition to the provisions described in the majority opinion, this sentence:

"The property is to be conveyed *by contract for warranty deed*, free of encumbrances except: Subject to mortgage hereinabove referred to."

(The italicized words were inserted by typewriter in the printed form.)

This instrument shows that the minds of the parties have not met on a complete contract.

In addition, we have the testimony of respondent husband (who at the time was attending law school and also working for a title insurance company) that he had prepared a rough draft of an executory contract for the purchase of the real estate and delivered it to the realtor who was going to prepare such a contract for the signatures of the parties.

He testified as follows:

"Q. On the Saturday following, you said you left a rough draft of the terms of the contract. Had you prepared that? A. I prepared a rough draft of the contract, at least the terms that I wanted included in the contract. Q. Well, were there some terms not included in the earnest money? A. I don't know. THE COURT: Your question is not quite clear to me, counsel. MR. WYMAN: Yes. BY MR. WYMAN: Q. In your rough draft of the contract to be executed, were there terms which were not set forth in the earnest money? A. I don't recall. I think perhaps there may have been. Q. Well, you contemplated that a contract to be executed would contain, —that there was another contract to be executed? A. Yes. A real estate contract. Q. And that it would contain terms which were not contained in the earnest money? A. Perhaps as to fire insurance. Q. Payment of taxes? A. Taxes are included in the earnest-money agreement. Specifies they will be pro-rated. Q. Future taxes? A. Taxes as of the current year. Q. Yes, but as to future taxes? A. Future taxes, after pro-ration, they are then paid by the purchaser, as I understand it, as I remember there, that is in the earnest money agreement. Q. At the time you paid the note, was that the,—to the real estate company,—was that the same time that you took in your rough draft copy? A. No. That

was one week before I took in the rough draft copy. Q. On the Saturday following the execution of the earnest money receipt, when you went back and told the real estate company, or left the rough draft copy, was that the time when you were told that Miss Hurd refused to go ahead? A. No. I took the rough draft copy in, I think it must have been the second Saturday, after signing the earnest money agreement, I took that in early in the morning, on Saturday, and left it with the girl in the office at Square Deal Realty, and told her I would come back, I think at 11 o'clock that morning, to close the transaction. And at that time, she took the rough draft and said that she would prepare the contract. Q. When were you told with relation to that that Miss Hurd wouldn't go ahead with the,— A. That same day, at 11 o'clock, when I went back to the Square Deal Realty. Miss Hurd had been there in the interim."

After appellant had received a better offer for the property, she authorized her attorney to advise respondents that she would sell to them for cash in the amount named in the earnest-money receipt. The attorney's letter stated:

"I write you as attorney for Mildred Hurd. For reasons personal to her, Miss Hurd declines to execute a contract pursuant to the earnest money receipt of January 13, 1953, in connection with Lot 4, and the North half of Lot 5, Block 169, Gilman's Addition to the City of Seattle.

"It is my opinion that under Washington law Miss Hurd is not required to execute a contract as indefinite as the one called for by the earnest money receipt, and I have so advised her.

"If under your earnest money receipt you wish to make payment of the entire purchase price prior to March 10, Miss Hurd will make all payments due on the mortgage to that date and deliver you a warranty deed subject to the mortgage on the property in accordance with the terms of the earnest money receipt."

It seems plain to me that both parties construed the earnest-money receipt as being an incomplete contract which required future negotiations, and that an executory contract of sale was to be negotiated and signed by the parties before they could have a meeting of the minds upon several essential matters. In other words, both upon its face and in the contemplation of the parties, the earnest-money receipt was

a contract to make a second contract, the terms of which had not been agreed upon.

The general rule applicable to such cases heretofore recognized by this court in actions for damages for breach of contract is stated in 12 Am. Jur. 521, § 24, as follows:

"*Agreement to Make Contract.*—An agreement to agree to do a certain specified thing, all the conditions of the postponed agreement being specified, is simply an agreement in praesenti to do it. A contract between two persons, upon a valid consideration, that they will, at some specified time in the future, at the election of one of them, enter into a particular contract, specifying its terms, is undoubtedly binding, and, upon a breach thereof, the party having the election or option may recover as damages what such particular contract to be entered into would have been worth to him, if made. Unless an agreement to make a future contract is definite and certain upon all the subjects to be embraced, however, it is nugatory. An agreement that they will in the future make such contract as they may then agree upon amounts to nothing. To be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations. Where a final contract fails to express some matter, as, for instance, a time of payment, the law may imply the intention of the parties; but where a preliminary contract leaves certain terms to be agreed upon for the purpose of a final contract, there can be no implication of what the parties will agree upon."

The comment under § 26 of Restatement of the Law of Contracts (paragraph b) illustrates the application of the rule by stating:

"b. The matter may be put in this way: If the parties indicate that the expected document is to be a mere 'memorial' of operative facts already existing, its non-existence does not prevent those facts from having their normal legal operation. What that operation is must be determined largely by oral testimony, or by preliminary or only partially complete writings. If the parties indicate that the expected document is to be the exclusive operative consummation of the negotiation, their preceding communications will not be operative as offer or acceptance. This also must be shown largely by oral testimony."

This court has held, in at least seven cases involving actions for damages for breach of contract (no specific performance being sought), that, where parties negotiating a contract intend their final agreement shall be evidenced by a written instrument, there is no meeting of the minds until the writing is executed: *McDonnell v. Coeur d'Alene Lbr. Co.*, 56 Wash. 495, 106 Pac. 135; *Stanton v. Dennis*, 64 Wash. 85, 116 Pac. 650; *Weldon v. Degan*, 86 Wash. 442, 150 Pac. 1184; *Chinook Lbr. & Shingle Co. v. McLane Lbr. & Shingle Co.*, 107 Wash. 587, 182 Pac. 625; *Empson Packing Co. v. Lamb-Davis Lbr. Co.*, 112 Wash. 75, 191 Pac. 833; *Jammie v. Robinson*, 114 Wash. 275, 195 Pac. 6; *Pennington & Co. v. Hedlund Box & Shingle Co.*, 116 Wash. 292, 199 Pac. 235.

Respondent husband testified (as above quoted) that he prepared a rough draft of a real-estate contract and gave it to the realtor to use in preparing such a contract for execution by the parties. It is obvious that both parties intended that their final agreement should be entirely embodied in an executory contract for the sale of the real estate, and that it would contain terms (in addition to those mentioned in the earnest-money receipt) which remained yet to be negotiated. Hence, there was no meeting of the minds of the parties and no contract to support an action for damages for its breach.

The decisions of this court cited above fully support my conclusion. To quote applicable portions of those decisions would unduly lengthen this dissent. I, therefore, am of the opinion that they should be followed in this case unless the majority is willing to expressly overrule them.

While I agree with the rule discussed in the majority opinion that a contract which is too indefinite to be specifically enforced (as in *Hubbell v. Ward*, 40 Wn. (2d) 779, 246 P. (2d) 468) *may* be certain enough to be the basis of an action for damages for its breach, I cannot, for the reasons stated above, find that the earnest-money receipt in this case is sufficiently definite even for the latter purpose.

I think that the judgment should be reversed with directions that respondents' recovery must be limited to such

sums, if any, as were paid by them directly or in escrow pursuant to the earnest-money receipt and agreement.

SCHWELLENBACH, J., concurs with DONWORTH, J.

---

December 13, 1955. Petition for rehearing denied.